THE STATE EX REL. GOBICH, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLEE.

[Cite as *State ex rel. Gobich v. Indus. Comm.,* 103 Ohio St.3d 585, 2004-Ohio-5990.]

(No. 2004-0187—Submitted September 14, 2004—Decided November 24, 2004.)

---

Per Curiam.

{¶ 1} In 1998, appellee Industrial Commission of Ohio granted the application of appellee-claimant, John F. Gobich, for permanent total disability ("PTD")

compensation and awarded compensation retroactive to July 3, 1996. In 2002, the Bureau of Workers' Compensation alleged that claimant had worked during this period and moved to have PTD benefits terminated, an overpayment assessed, and fraud declared.

{¶ 2} The evidence showed that before being declared PTD, claimant had done a couple of odd jobs in 1996 and 1997. These jobs became problematic when the commission backdated claimant's PTD award over this period. There was also evidence that claimant had worked four hours for a total of $120 in January 1997 and was paid $350.63 for an odd job in early 1998, both jobs again preceding claimant's notification that he had been awarded PTD compensation.

{¶ 3} A commission Staff Hearing Officer ("SHO") denied the bureau's motion:

{¶ 4} "The Staff Hearing Officer finds that the claimant was gainfully employed for periods of time subsequently [sic] to filing his application for permanent total disability compensation but prior to receiving the order granting his application. The claimant testified that he performed 'odd' jobs for his friend and business owner, Charles Caudill, earning $855.00 in 1996 and $960 in 1997. The Staff Hearing Officer finds that at the time the claimant received wages from Caudill Construction Co., he was not receiving any compensation for disability due to the industrial claims. The claimant's hearing on his application for permanent total compensation was on 01/22/98 and the finding granting permanent total compensation was mailed 02/04/98.

{¶ 5} "The Staff Hearing Officer further finds that the claimant's performance of 'odd' labor jobs does not demonstrate that the claimant is able to perform sustained remunerative employment despite his limitations due to the allowed conditions in the claims. The fact that the claimant performed simple laboring jobs on a limited basis for his business–owner friend does not rise to the level of constituting the ability to engage in sustained remunerative employment.

{¶ 6} "* * *

{¶ 7} "The Staff Hearing Officer denies the Bureau of Workers' Compensation request to terminate permanent total compensation. The Staff Hearing Officer finds that the claimant is not capable of performing sustained remunerative employment based on the limited work activities engaged in prior to the adjudication of his permanent total disability application.

{¶ 8} "The Staff Hearing Officer further denies the Bureau of Workers' Compensation request that a finding of fraud be made. The Staff Hearing Officer finds that the claimant did not have the intent to falsely conceal employment or make a representation falsely in order to obtain compensation that he was otherwise not qualified to receive."

{¶ 9} The bureau moved for reconsideration. Its motion contained no new information and simply rehashed evidence that had already been presented to the SHO. In a June 18, 2002 interlocutory order, the commission decided to set the matter for hearing. The order, however, also directed that the merits of claimant's PTD termination be set for the same hearing.

{¶ 10} On October 25, 2002, the commission found that it had continuing jurisdiction to reconsider the case:

{¶ 11} "It is the finding of the Industrial Commission that the order of the Staff Hearing Officer is based on clear mistakes of law of such character that remedial action would clearly follow; therefore, the exercise of continuing jurisdiction is appropriate in this case. In granting the injured worker's application for permanent total disability, the Staff Hearing Officer failed to consider the fact that the injured worker was working immediately prior to, and after, the hearing on 01/22/1998."

{¶ 12} The commission then stopped the payment of claimant's PTD benefits, declared an overpayment of all prior PTD compensation, and issued a declaration of fraud.

{¶ 13} Claimant filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission had abused its discretion in reconsidering the May 10, 2002 SHO order. The court of appeals disagreed and denied the writ, prompting claimant's appeal to this court as of right.

{¶ 14} The commission's power to reconsider a previous decision derives from its general grant of continuing jurisdiction under R.C. 4123.52. *State ex rel. Royal v. Indus. Comm.* (2002), 95 Ohio St.3d 97, 99, 766 N.E.2d 135. This authority, of course, has limits. *State ex rel. B & C Machine Co. v. Indus. Comm.* (1992), 65 Ohio St.3d 538, 541, 605 N.E.2d 372. Continuing jurisdiction can be invoked only where one of these preconditions exists: (1) new and changed circumstances, (2) fraud, (3) clear mistake of fact, (4) clear mistake of law, or (5) error by an inferior tribunal. *State ex rel. Nicholls v. Indus. Comm.* (1998), 81 Ohio St.3d 454, 459, 692 N.E.2d 188.

{¶ 15} The presence of one of these prerequisites must be clearly articulated in any commission order seeking to exercise reconsideration jurisdiction. *Nicholls*; *State ex rel. Foster v. Indus. Comm.* (1999), 85 Ohio St.3d 320, 707 N.E.2d 1122. This means that the prerequisite must be both identified and explained. Id. It is not enough to say, for example, that there has been a clear error of law. The order must also state what that error is. *Nicholls*, 81 Ohio St.3d at 459, 692 N.E.2d 188; *Foster* at 322, 707 N.E.2d 1122. This ensures that the party opposing reconsideration can prepare a meaningful defense to the assertion that continuing jurisdiction is warranted. *Royal*, 95 Ohio St.3d at 100, 766 N.E.2d

135. It also permits a reviewing court to determine whether continuing jurisdiction was properly invoked. Id. at 99–100, 766 N.E.2d 135.

{¶ 16} In this controversy, the commission rested its exercise of continuing jurisdiction on "*clear mistakes* of law of such character that remedial action would *clearly* follow * * *. [T]he Staff Hearing Officer failed to consider the *fact* that the injured worker was working immediately prior to, and after, the [PTD] hearing on 01/22/1998." (Emphasis added.)

{¶ 17} Two questions arise from this reasoning: (1) Was there a mistake? (2) If so, was it clear? On close examination, it appears that, regardless of how the bureau tried to characterize it, its complaint with the SHO's order was really an evidentiary one: the bureau produced evidence that it believed established a capacity for sustained remunerative employment, and the SHO found otherwise. *Royal*, however, has specifically stated that a legitimate disagreement as to evidentiary interpretation does not mean that one of them was mistaken and does not, at a minimum, establish that an error was *clear*. Id., 95 Ohio St.3d at 100, 766 N.E.2d 135.

{¶ 18} It is also unclear whether the reason for continuing jurisdiction is a mistake of law or a mistake of fact. While the commission claimed the former, it cited no misapplication of the law. To the contrary, it referred only to an omission of fact. *Royal*, moreover, has categorized evidentiary disputes as factual. This is significant because *Nicholls, Foster,* and *Royal* are uncompromising in their demand that the basis for continuing jurisdiction be clearly articulated. The commission's current justification is ambiguous.

{¶ 19} Ambiguity also plagues the commission's reference to *mistakes* of law. Only one error is listed, unless the commission considers the SHO's failure to discuss work performed in early 1997 and early 1998 as a separate error. Such a characterization seems misleading and further muddies the commission's order.

{¶ 20} The commission's description of the perceived error as one in which "remedial action would clearly follow" invites scrutiny as well. As noted above, evidentiary disagreements rarely establish an error as "clear." Moreover, from a legal standpoint, the SHO's analytical foundation is actually more sound than the bureau or commission's, which further undermines an assertion of clear error. Unlike the bureau and commission, the SHO recognized that it is not the capacity for remunerative employment that bars a PTD award. It is the capacity for *sustained* remunerative employment. *State ex rel. Stephenson v. Indus. Comm.* (1987), 31 Ohio St.3d 167, 170, 31 OBR 369, 509 N.E.2d 946. Here, the SHO concluded that the asserted activities were so isolated and brief that they did not establish an ability to work on a sustained, ongoing basis. And, contrary to the commission's assertion otherwise, it does not follow that consideration of claimant's activities in the weeks before his PTD hearing would have clearly compelled

a different result. Claimant received a $206.24 check from Caudill six weeks before his January 1998 PTD hearing. There is evidence that, during January 1998, claimant worked four hours. The following month—still prior to receiving the order granting PTD—he worked 17. This is comparable to the hours and remuneration considered by the SHO for 1996 and 1997 and rejected as insufficient to establish a capacity for sustained work.

{¶ 21} The court of appeals held that, regardless of any lack of clarity in the commission's order, the bureau's motion for reconsideration and claimant's motion in opposition "showed that relator was adequately apprised of the issues for reconsideration considered by the commission at the subsequent hearing." The propriety of continuing jurisdiction, however, does not rest on a party's awareness of the merit issues the movant hopes to revisit. The claimant obviously knew what the merit issues were—termination of PTD and declarations of fraud and overpayment. The issue is whether the commission's order adequately apprised claimant of why the case was being reopened. As *Nicholls, Foster,* and *Royal* stressed, a party cannot effectively challenge the reopening of an otherwise final decision if it does not know why continuing jurisdiction was exercised.

{¶ 22} The judgment of the court of appeals is reversed.

Judgment reversed.

MOYER, C.J., RESNICK, F.E. SWEENEY, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

PFEIFER, J., dissents.

---

Clements, Mahin & Cohen, L.L.P., and William E. Clements, for appellant.

Jim Petro, Attorney General, and William J. McDonald, Assistant Attorney General, for appellee.