DECISION
{¶ 1} Relator, Odell Robertson, seeks a writ of mandamus directing respondent Industrial Commission of Ohio ("commission") to vacate orders in which (1) the commission granted a motion for reconsideration by respondent Tenneco Packaging, Inc. ("employer"), and (2) the commission vacated an order of a staff hearing officer ("SHO") that increased relator's average weekly wage ("AWW"). Additionally, relator seeks an order directing the commission to reinstate the SHO's order that increased relator's AWW.
 {¶ 2} Pursuant to Loc.R. 12(M) of the Tenth District Court of Appeals, this court appointed a magistrate to consider relator's cause of action without limitation of powers specified in Civ.R. 53(C). The magistrate examined the evidence and issued a decision, wherein he made findings of fact and conclusions of law. (Attached as Appendix A.) Finding no abuse of discretion by the commission, the magistrate recommended denial of relator's request for a writ of mandamus.
 {¶ 3} Relator has filed objections to the magistrate's decision. See, generally, Civ.R. 53(E)(3). Challenging the magistrate's conclusion of law that the commission's interlocutory orders met all requirements for a valid exercise of continuing jurisdiction, relator asserts that the magistrate's conclusion conflicts with State ex rel. Gobich v. Indus. Comm.,103 Ohio St.3d 585, 2004-Ohio-5990, and State ex rel. Holdren v.Indus. Comm., 105 Ohio St.3d 291, 2005-Ohio-1734.
 {¶ 4} In his objections, relator does not challenge the magistrate's findings of fact nor does relator challenge the magistrate's conclusion of law that the commission did not abuse its discretion by denying relator's request for an adjustment of the AWW assigned to his claims. Rather, in his objections, relator only challenges the magistrate's conclusion of law that the commission properly exercised continuing jurisdiction. See, generally, Civ.R. 53(E)(3)(d) (providing that "[a] party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule").
 {¶ 5} The commission's authority to reconsider a previous decision is drawn from a general grant of continuing jurisdiction under R.C. 4123.52. Gobich, supra, at ¶ 14, citing State exrel. Royal v. Indus. Comm. (2002), 95 Ohio St.3d 97, 99. However, such authority is not without limitation. Gobich, at ¶ 14, citing State ex rel. B C Machine Co. v. Indus. Comm.
(1992), 65 Ohio St.3d 538, 541, rehearing denied (1993),66 Ohio St.3d 1414.
 {¶ 6} The Gobich court instructed: "Continuing jurisdiction can be invoked only where one of these preconditions exists: (1) new and changed circumstances, (2) fraud, (3) clear mistake of fact, (4) clear mistake of law, or (5) error by an inferior tribunal." Id. at ¶ 14, citing State ex rel. Nicholls v. Indus.Comm. (1998), 81 Ohio St.3d 454, 459.
 {¶ 7} The Gobich court further instructed:
The presence of one of these prerequisites must be clearly articulated in any commission order seeking to exercise reconsideration jurisdiction. Nicholls; State ex rel. Fosterv. Indus. Comm. (1999), 85 Ohio St.3d 320, 707 N.E.2d 1122. This means that the prerequisite must be both identified and explained. Id. It is not enough to say, for example, that there has been a clear error of law. The order must also state what that error is. Nicholls, 81 Ohio St.3d at 459, 692 N.E.2d 188;Foster at 322, 707 N.E.2d 1122. This ensures that the party opposing reconsideration can prepare a meaningful defense to the assertion that continuing jurisdiction is warranted. Royal,95 Ohio St.3d at 100, 766 N.E.2d 135. It also permits a reviewing court to determine whether continuing jurisdiction was properly invoked. Id. at 99-100, 766 N.E.2d 135.
Id. at ¶ 15.
 {¶ 8} In Gobich, claiming that the claimant had worked while he received permanent total disability ("PTD") compensation, the Bureau of Workers' Compensation ("BWC") moved to have claimant's PTD benefits terminated, an overpayment assessed, and fraud declared. Id. at ¶ 1. After an SHO denied the BWC's motion, the BWC moved for reconsideration and the commission later found that it had continuing jurisdiction to reconsider the matter. Id. at ¶ 3, 9, 10.
 {¶ 9} The Gobich court found that the commission's complaint with an SHO's order was really an evidentiary one, id. at ¶ 17, and the Gobich court further found that, although the commission claimed a mistake of law as the basis for continuing jurisdiction, the commission's justification for continuing jurisdiction was ambiguous. Id. at ¶ 18. Reversing the judgment of this court, the Gobich court stated that "[t]he propriety of continuing jurisdiction * * * does not rest on a party's awareness of the merit issues the movant hopes to revisit. * * * The issue is whether the commission's order adequately apprised claimant of why the case was being reopened." Id. at ¶ 21.
 {¶ 10} In Holdren, supra, the BWC also presented evidence that it believed warranted termination of a claimant's PTD compensation, a declaration of overpayment, and a declaration of fraud. Id. at ¶ 2, 16. After the BWC moved to have the claimant's PTD benefits terminated, an overpayment assessed, and fraud declared, an SHO granted the BWC's motion in part. Id. at ¶ 2. The BWC then moved for reconsideration, id. at ¶ 3, and the commission later found it had continuing jurisdiction. Id. at ¶ 8.
 {¶ 11} The Holdren court observed that "[t]he bureau's reconsideration request in this case was motivated in large part by its objection to the SHO's interpretation of the evidence — i.e., the SHO's failure to view the evidence in the same way as the bureau." Id. at ¶ 18. The Holdren court noted that "`a legitimate disagreement as to evidentiary interpretation does not mean that one of them was mistaken and does not, at a minimum, establish that the error was clear.'" Id. at ¶ 17, quotingGobich, at ¶ 17. (Emphasis sic.)
 {¶ 12} Unlike Gobich and Holdren, in this case employer's complaint with the SHO's order is not an evidentiary one; rather, the issue presented in employer's filing concerns a matter of law, namely, whether the SHO properly applied State ex rel.Price v. Cent. Services, Inc., 97 Ohio St.3d 245,2002-Ohio-6397, reconsideration denied, 97 Ohio St.3d 1498,2002-Ohio-7248. Stated differently, the issue here concerns whether the SHO properly construed Price and its holding.
 {¶ 13} In interlocutory orders related to claim Nos. 795099-22 and 968627-22, the commission stated:
It is the finding of the Industrial Commission that the employer has presented evidence of sufficient probative value to warrant adjudication of the request for reconsideration regarding the alleged presence of a clear mistake of law of such character that remedial action would clearly follow.
Specifically, it is alleged that the Staff Hearing Officer misapplied the Price decision. Additionally, the Staff Hearing Officer failed to identify the statutory maximum applicable to the award.
Based on these findings, the Industrial Commission directs that the employer's request for reconsideration filed 11/05/2004 is to be set for hearing to determine if the alleged mistake of law as noted herein is sufficient for the Industrial Commission to invoke its continuing jurisdiction.
In the interests of administrative economy and for the convenience of the parties, after the hearing on the question of continuing jurisdiction, the Industrial Commission will take the matter under advisement and proceed to hear the merits of the underlying issue. The Industrial Commission will thereafter issue an order on the matter of continuing jurisdiction under Ohio Revised Code 4123.532. If the authority to invoke continuing jurisdiction is found, the Industrial Commission will address the merits of the underlying issue.
This order is issued pursuant to State ex rel. Nicholls v.Indus. Comm. (1998), 81 Ohio St.3d 454, State ex rel. Foster v.Indus. Comm. (1999), 85 Ohio St.3d 320, and in accordance with Ohio Administrative Code 4121-3-09.
 {¶ 14} In these interlocutory orders, the commission identified and explained that a clear mistake of law, namely the SHO's purported misapplication of Price and the SHO's purported failure to identify the statutory maximum applicable to the SHO's award, underlay the commission's view that adjudication of employer's request for reconsideration was warranted. Cf.Gobich, at ¶ 15 (stating that "[i]t is not enough to say, for example, that there has been a clear error of law"). By identifying and explaining these mistakes of law, the commission ensured that relator could prepare a meaningful defense to employer's claim that continuing jurisdiction was warranted. SeeGobich, at ¶ 14-15.
 {¶ 15} Therefore, for the reasons discussed above, relator's claim that the commission's interlocutory orders failed to meet all requirements for a valid exercise of continuing jurisdiction is not convincing.
 {¶ 16} After issuing interlocutory orders and taking the matter of continuing jurisdiction under advisement, the commission ultimately concluded that exercise of continuing jurisdiction was justified. The commission stated, in relevant part:
It is the finding of the Industrial Commission that the employer has met the burden of proving that the Staff Hearing Officer order, dated 10/19/2004, contains a clear mistake of law of such character that remedial action would clearly follow. Specifically, the order of the Staff Hearing Officer, dated 10/19/2004 misapplied State ex rel. Price v. Central Services,Inc., 97 Ohio St.3d 245, 2002-Ohio-6397. The Industrial Commission finds that the injured worker's increased earnings and the amount of time between his industrial injuries and eventual departure from the workforce due to those injuries are not sufficient to justify relief pursuant to Price. Therefore, the Staff Hearing Officer erred in granting the injured worker's request to increase his average weekly wage. Accordingly, the Industrial Commission invokes the authority of continuing jurisdiction, pursuant to R.C. 4123.52 and the case law of Stateex rel. Nicholls v. Indus. Comm. (1988), 81 Ohio St.3d 454, andState ex rel. Foster v. Indus. Comm. (1999), 85 Ohio St.3d 320, in order to correct this error.
(Orders, dated March 15, 2005.)
 {¶ 17} Therefore, for the foregoing reasons, we conclude that the magistrate properly found that that the commission did not abuse its discretion by exercising continuing jurisdiction. Having concluded that the magistrate properly found that the commission did not abuse its discretion by exercising continuing jurisdiction, we overrule relator's objections to the magistrate's decision.
 {¶ 18} Additionally, we further find that in his decision the magistrate properly discerned pertinent facts and properly applied the relevant law to those facts; therefore, we adopt the magistrate's decision as our own, including the magistrate's findings of fact and conclusions of law, except for a factual reference in the magistrate's ninth finding of fact. In his ninth finding of fact, the magistrate referenced an April 15, 2005 order of the commission; rather, according to the stipulated evidence, the commission's order originated on March 15, 2005.
 {¶ 19} Accordingly, having adopted the magistrate's decision as our own with the exception of the factual error in the magistrate's ninth finding of fact, and having overruled relator's objections to the magistrate's decision, we deny relator's request for a writ of mandamus.
Objections overruled; writ denied.
Klatt, P.J., and Brown, J., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Odell Robertson, : Relator, : v. : No. 05AP-479 The Industrial Commission of Ohio : and Tenneco Packaging, Inc., : Respondents. :
 MAGISTRATE'S DECISION Rendered on November 30, 2005 Ward, Kaps, Bainbridge, Maurer Melvin, L.L.C., and MatthewA. Weller, for relator.
Jim Petro, Attorney General, and Gerald H. Waterman, for respondent Industrial Commission of Ohio.
Buckingham, Doolittle Burroughs, LLP, Michael L. Williams,Brett L. Miller and Richard A. Hernandez, for respondent Tenneco Packaging, Inc.
 IN MANDAMUS {¶ 20} In this original action, relator, Odell Robertson, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its March 15, 2005 order that exercised continuing jurisdiction to vacate a staff hearing officer's order that had granted relator's motion for an adjustment of his average weekly wage ("AWW"), and to enter an order reinstating the staff hearing officer's order.
Findings of Fact:
 {¶ 21} 1. Relator sustained two industrial injuries while employed with respondent Tenneco Packaging, Inc. ("employer"), a self-insured employer under Ohio's workers' compensation laws. Relator's September 7, 1980 injury is allowed for "aggravation of preexisting low back injury of herniated lumbar disc L5-S1," and is assigned claim number 795099-22. His February 17, 1988 injury is allowed for "sprain left knee," and is assigned claim number 968627-22.
 {¶ 22} 2. AWW for the September 7, 1980 injury was initially set at $510.21. AWW for the February 17, 1988 injury was initially set at $605.36.
 {¶ 23} 3. On September 29, 1994, relator filed an application for permanent total disability ("PTD") compensation. In the application, relator indicated that June 5, 1994 was the last day he had worked.
 {¶ 24} 4. Following an August 9, 1995 hearing, a staff hearing officer ("SHO") issued an order granting the PTD application.
 {¶ 25} 5. On January 28, 2004, citing State ex rel. Price v.Cent. Serv., Inc., 97 Ohio St.3d 245, 2002-Ohio-6397, relator moved for an adjustment of his AWW in order to increase his weekly rate of PTD compensation. In his motion, relator claimed that June 5, 1994 was the last day he worked, and that his AWW should be calculated based upon his earnings during 1993 and 1994. Relator claimed that his PTD rate should be based upon the year his disability began, rather than the year of his date of injury.
 {¶ 26} 6. Following an October 19, 2004 hearing, an SHO issued an order granting relator's January 28, 2004 motion to the extent that AWW was reset at $1,023.03 based upon earnings during 1993 and 1994. The AWW reset was specifically based upon the SHO's interpretation of Price. The SHO's order, mailed October 26, 2004, states:
After review of the Supreme Court of Ohio decision in State exrel. Price v. Central Services et al. (2002), 97 Ohio St.3d 245, Ohio Revised Code Section 4123.61, and the evidence presented by the injured worker, this Staff Hearing Officer finds the injured worker has demonstrated "special circum-stances" sufficient to support a re-adjustment of the injured worker's average weekly wage, and a re-calculation of the injured worker's permanent and total disability benefits.
In Price, the injured worker, Patrick D. Price, returned to work after an initial period of temporary total disability compensa-tion was paid, and Price" continued working at higher salaries for over 26 additional years, despite numerous hospitaliza-tions and surgeries and continuing degradation of his health." Additionally, Price's previously set average weekly wage of $56.00 was relatively so low as to" manifestly raise the spectre of inequity." His re-calculated average weekly wage based on the earnings from his last full year of work was $484.44.
In the instant case, the injured worker's date of injury was 09/07/1980 in claim 795099-22, and 02/17/1988 in claim 968627-22. The injured worker last worked on 06/05/1994, based on the information on the IC-2 Application filed by the injured worker on 09/29/1994. The original average weekly wage was set at $510.21 in claim 795099-22, and $605.36 in claim 968627-22. The injured worker is now requesting the average weekly wage be re-set, and the permanent and total disability benefits be re-calculated and paid at the appropriate rate in effect for 1994, the year in which the injured worker last worked.
Reviewing the "Summary FICA Earnings for Years Requested" statement attached to the injured worker's motion, this hearing officer finds earnings of $29,919.69 for 1994, and $46,807.48 for 1993. The injured worker only worked 23 weeks in 1994. * * * Dividing the total of $76,727.17 by 75 weeks worked in 1993 and 1994, the average weekly wage would be $1,023.03. An increase in the average weekly wage from $510.21 and $605.36 to $1,023.03 is sufficient to warrant a formal re-adjustment of the average weekly wage. The new average weekly wage is a "close approximation of probable future earnings," since the injured worker has demonstrated an increase of $417.67 per week, in approximately six years between the onset of the 1988 claim and the last date worked.
This hearing officer finds the injured worker has met the burden of demonstrating "special circumstances," and those circumstances are of sufficient weight to warrant a change in the average weekly wage. The injured worker has demon-strated that the return to work was of such a reliable and long-term nature so as to result in a significantly greater earning capacity. The wage rate as set today, will more fairly compensate this injured worker, and is reflective of future earning capacity. With a change in the average weekly wage, the re-calculation of the permanent and total disability benefit is appropriate.
Therefore, the request to re-set the average weekly wage is granted. The average weekly wage is ordered re-set at $1,023.03. The request to adjust the rate of the payment of permanent and total disability benefits is granted, and injured worker's permanent and total disability benefits are ordered re-calculated, commencing 01/28/2002, based on the new average weekly wage and the appropriate rate for 1994 (the year of last employment) * * *.
 {¶ 27} 7. On November 5, 2004, the employer filed a notice of appeal in which the employer sought to administratively appeal the SHO's order of October 19, 2004, to the three-member commission.
 {¶ 28} 8. On February 2, 2005, the commission mailed an interlocutory order that treats the employer's notice of appeal as a request for reconsideration. The interlocutory order states:
It is the finding of the Industrial Commission that the employer has presented evidence of sufficient probative value to warrant adjudication of the request for reconsideration re-garding the alleged presence of a clear mistake of law of such character that remedial action would clearly follow.
Specifically, it is alleged that the Staff Hearing Officer misapplied the Price decision. Additionally, the Staff Hearing Officer failed to identify the statutory maximum applicable to the award.
Based on these findings, the Industrial Commission directs that the employer's request for reconsideration filed 11/05/2004 is to be set for hearing to determine if the alleged mistake of law as noted herein is sufficient for the Industrial Commission to invoke its continuing jurisdiction.
In the interests of administrative economy and for the convenience of the parties, after the hearing on the question of continuing jurisdiction, the Industrial Commission will take the matter under advisement and proceed to hear the merits of the underlying issue. The Industrial Commission will thereafter issue an order on the matter of continuing jurisdic-tion under Ohio Revised Code 4123.52. If authority to invoke continuing jurisdiction is found, the Industrial Commission will address the merits of the underlying issue.
This order is issued pursuant to State ex rel. Nicholls v.Indus. Comm. (1998) 81 Ohio St.3d 454, State ex rel. Foster v.Indus. Comm. (1999) 85 Ohio St. 3d 320, and in accordance with Ohio Administrative Code 4121-3-09.
 {¶ 29} 9. Following a March 15, 2005 hearing, the three-member commission issued an order that grants the employer's November 5, 2004 request for reconsideration, vacates the SHO's order of October 19, 2004, and denies relator's January 28, 2004 motion for an adjustment of AWW based on Price. The commission's April 15, 2005 order states:
It is the finding of the Industrial Commission that the employer has met the burden of proving that the Staff Hearing Officer order, dated 10/19/2004, contains a clear mistake of law of such character that remedial action would clearly follow. Specifically, the order of the Staff Hearing Officer, dated 10/19/2004 misapplied State ex rel. Price v. Central Services,Inc., 97 Ohio St.3d 245, 2002-Ohio-6397. The Industrial Com-mission finds that the injured worker's increased earnings and the amount of time between his industrial injuries and eventual departure from the workforce due to those injuries are not sufficient to justify relief pursuant to Price. Therefore, the Staff Hearing Officer erred in granting the injured worker's request to increase his average weekly wage. Accordingly, the Industrial Commission invokes the authority of continuing jurisdiction, pursuant to R.C. 4123.52 and the case law of Stateex rel. Nicholls v. Indus. Comm. (1998), 81 Ohio St.3d 454, andState ex rel. Foster v. Indus. Comm. (1999), 85 Ohio St.3d 320, in order to correct this error.
With respect to the merits, the C-86 motion filed by the injured worker on 01/28/2004 requesting relief pursuant to thePrice case is denied.
The injured worker sustained injuries while working for the employer of record on 09/07/1980 (claim #795099-22) and 02/07/1988 [sic] (claim #968627-22). He received medical treat-ment and benefits in both claims, including temporary total disability compensation and permanent partial disability benefits. The average weekly wage for the 1980 claim was set at $510.21 and the average weekly wage for the 1988 claim was set at $605.36.
He continued to work until 06/05/1994 when he stopped working and filed his application for permanent total disability which was granted. Approximately ten years after the injured worker's last day of work, he filed a motion seeking an adjustment of his average weekly wage and his permanent total disability rate pursuant to R.C. 4123.61 and the Ohio Supreme Court case ofState ex rel. Price v. Central Services, Inc.,97 Ohio St.3d 245, 2002-Ohio-6397. More specifically, the injured worker's motion requested that the average weekly wage be set at $1,030.86.
The Commission finds that relief under Price is not appropriate for this claim and, therefore, denies the injured worker's request to adjust his average weekly wage and his permanent total disability rate. The Price case involved an injured worker who was injured in 1969. Price's average weekly wage was set at $56 based on his earnings for the year preceding his industrial injury in accordance with the standard method for calculating an injured worker's average weekly wage under R.C.4123.61. After his industrial injury, Price returned to work for an additional 26 years and last worked on 03/31/1997. His average weekly wage, based on his earnings in 1996, was calculated to be $484.44.
Price then applied for permanent total disability. The application was granted by the Industrial Commission with a permanent total rate of $45.50 per week, based on his 1968 average weekly wage. Price then moved for an upward adjustment of his average weekly wage and recalculation of his weekly permanent total disability payments based on his earnings for 1996. The basis of Price's motion was based on the "special circumstances" provision of R.C. 4123.61 and the [State ex rel. Lemke v. BrushWellman, Inc. (1998), 84 Ohio St.3d 161] case. The Supreme Court held that "under the special circumstances of this case, the version of R.C. 4123.58 in effect on the date of Price's industrial injury does not apply in determining his maximum rate of permanent total disability compensation. Instead, Price's permanent total disability award is subject to the statutory provisions of R.C. 4123.58 in effect on the date that his injury forced him from the job market." Price at 254. In arriving at this holding, the Supreme Court found that there was no "substantial justice" in limiting Price's permanent total disability rate to $56 per week based on a 1969 statutory cap. The driving force behind the Supreme Court's decision was to avoid the specter of inequity and to do substantial justice to the injured worker.
While the Price case in instructive, the Commission finds that it does not apply to this claim. While the Commission recognizes that the Price case does not set forth much guidance with respect to similar cases, it is also mindful that thePrice decision was based on an analysis of the "special circumstances" provision of R.C. 4123.61 and whether the original average weekly wage raises the specter of inequity.
R.C. 4123.61 sets forth a standard method for calculating the average weekly wage of injured workers. This section also sets forth a "special circumstances" provision for an altern-ative method of calculating the average weekly wage in cases where the standard method cannot be justly determined. More precisely, it provides:
In cases where there are special circumstances under which the average weekly wage cannot justly be determined by applying this section, the administrator of workers' compensa-tion, in determining the average weekly wage in such cases, shall use such method as will enable him to do substantial justice to the claimants.
The "special circumstances" in the Price case was the fact that the injured worker continued to work 26 years after the industrial injury, and was making $484.44 per week by 1996. Thus, there was a substantial disparity between the $56 per week Price earned in 1968 and the aforementioned figure for 1996.
In this case, the Commission finds that the injured worker has not sustained his burden of proving "special circumstances" in order to justify an upward modification of his average weekly wage and his permanent total disability rate. The average weekly wage for the 1988 claim was set at $605.36 and the injured worker worked for just another six years. The injured worker is now requesting that the average weekly wage be adjusted upwards to $1,030.86 based on earnings for the last year and a half he worked. The Commission finds that the current average weekly wage for both claims does not rise to the level of the specter of inequity as was the case in the Price decision. The Commission finds that relief under Price is extraordinary in nature. The Commission finds that the mere passage of time, and the fact that the injured worker was making more money six years after the last industrial injury than he was prior to the industrial injury, does not qualify as a special circumstance warranting an upward adjustment of the average weekly wage. For these reasons, the request for Price relief is denied.
 {¶ 30} 10. On May 13, 2005, relator, Odell Robertson, filed this mandamus action.
Conclusions of Law:
 {¶ 31} Two issues are presented: (1) whether the commission abused its discretion in exercising continuing jurisdiction over the SHO's order of October 19, 2004; and (2) whether the commission abused its discretion in denying relator's motion for an AWW adjustment.
 {¶ 32} Finding no abuse of discretion, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 33} Turning to the first issue, continuing jurisdiction is not unlimited. Its prerequisites are: (1) new and changed circumstances; (2) fraud; (3) clear mistake of fact; (4) clear mistake of law; and (5) error by inferior tribunal. State exrel. Royal v. Indus. Comm. (2002), 95 Ohio St.3d 97, 99; Stateex rel. Nicholls v. Indus. Comm. (1998), 81 Ohio St.3d 454.
 {¶ 34} The presence of one of these prerequisites must be clearly articulated in any commission order seeking to exercise reconsideration jurisdiction. State ex rel. Gobich v. Indus.Comm., 103 Ohio St.3d 585, 587, 2004-Ohio-5990. The prerequisite must be both identified and explained to ensure that the party opposing reconsideration can prepare a meaningful defense to the assertion that continuing jurisdiction is warranted. Id.
 {¶ 35} The commission's interlocutory order mailed February 2, 2005, articulates that the SHO's order of October 19, 2004, allegedly contains a clear mistake of law. It specifically articulates that the alleged clear mistake of law is "that the Staff Hearing Officer misapplied the Price decision."
 {¶ 36} Citing Gobich, relator poses two challenges to the commission's inter-locutory order and to the commission's exercise of continuing jurisdiction. First, relator asserts that the three-member commission simply disagreed with the SHO's evidentiary interpretation and, thus, no error was identified. Second, relator argues that the interlocutory order's identification of the alleged clear mistake of law, as the SHO's misapplication of the Price decision, is ambiguous and, thus, cannot support continuing jurisdiction.
 {¶ 37} In Gobich, the court held that the commission had improperly exercised continuing jurisdiction when it vacated an SHO's order awarding PTD compensation by pronouncing that the SHO's order is based upon "clear mistakes of law." In Gobich,
the bureau had moved for commission reconsideration of the SHO's order.
 {¶ 38} In Gobich, the court found that the bureau's complaint with the SHO's award of permanent total disability was an evidentiary one:
* * * [T]he bureau produced evidence that it believed established a capacity for sustained remunerative employ-ment, and the SHO found otherwise. Royal, however, has specifically stated that a legitimate disagreement as to evidentiary interpretation does not mean that one of them was mistaken and does not, at a minimum, establish that an error was clear. Id.,95 Ohio St.3d at 100, 766 N.E.2d 135.
It is also unclear whether the reason for continuing jurisdiction is a mistake of law or a mistake of fact. While the commission claimed the former, it cited no misapplication of the law. To the contrary, it referred only to an omission of fact.Royal, moreover, has categorized evidentiary disputes as factual. This is significant because Nicholls, [State ex rel.Foster v. Indus. Comm. (1999), 85 Ohio St.3d 320], and Royal
are uncompromising in their demand that the basis for continuing jurisdiction be clearly articulated. The commission's current justification is ambiguous.
Id. at ¶ 17-18. (Emphasis sic.)
 {¶ 39} Relator's reliance on Gobich is misplaced. The commission here did not disagree with the SHO's evidentiary interpretation. The commission disagreed with the SHO's legal interpretation of Price and the resulting misapplication ofPrice to the undisputed facts of this case.
 {¶ 40} Also, the commission's identification of the clear mistake of law as the SHO's misapplication of Price is not ambiguous or too vague to support continuing jurisdiction. While the Price case might be viewed as a determination of a complex legal issue in the workers' compensation arena, the legal complexity does not render ambiguous the commission's identification of the clear mistake of law as the SHO's misapplication of the Price case. There was no requirement that the commission present its legal analysis of the Price case in its interlocutory order of February 2, 2005, in order to give relator the notice required to defend against the commission's exercise of continuing jurisdiction.
 {¶ 41} In short, the commission did not abuse its discretion in exercising its continuing jurisdiction.
 {¶ 42} Turning to the second issue, following its finding that the SHO's order contains a clear mistake of law, the commission, in its March 15, 2005 order, denied relator's motion for an AWW adjustment. The commission, in its March 15, 2005 order, explains how Price does not support relator's motion based on its legal analysis of the Price case.
 {¶ 43} Relator cannot show a clear legal right to a new AWW calculation under Price. Analysis here begins with a review and analysis of the Price case as well as some additional case authorities.
 {¶ 44} In Price, the claimant, Patrick D. Price, was severely injured on December 22, 1969. He was unable to work for over a year and received TTD compensation based on an AWW of $56, which was calculated on the basis of Price's earnings for the year preceding his injury in accordance with the standard method under R.C. 4123.61.
 {¶ 45} Price eventually returned to his employment and continued working at higher salaries for over 26 additional years, despite numerous hospitalizations, surgeries and continuing degradation of his health. He last worked on March 31, 1997. His AWW based on his earnings in 1996 was $484.44.
 {¶ 46} On December 13, 1997, Price applied for PTD compensation. In March 1999, PTD compensation was awarded at a rate of $45.50 per week. This rate was computed by multiplying Price's 1968 AWW of $56 by 66 and two-thirds percent, and then raising that amount to the statutory minimum rate for PTD awards that was in effect in 1969. Price's PTD award was then reduced to $36.40 per week after he applied for and was granted a lump-sum payment for attorney fees.
 {¶ 47} Price moved for an upward adjustment of his AWW and a recalculation of his weekly PTD payments in order to reflect his earnings in 1996, the last full year that he worked before his industrial injury forced him from the job market. Price relied upon the "special circumstances" provision of R.C. 4123.61, andState ex rel. Lemke v. Brush Wellman, Inc. (1998),84 Ohio St.3d 161.
 {¶ 48} Finding "extraordinary circumstances," the SHO granted Price's motion, reset his AWW at $484.44, and ordered that Price's PTD rate be readjusted in light of the new AWW.
 {¶ 49} In a split decision, the commission modified the SHO's order. The commission increased Price's AWW from $56 to $484.44, but then limited the PTD award to a maximum rate of $56 per week.
 {¶ 50} The Price court stated, at ¶ 12:
* * * The issue is simply whether Price's PTD award is subject to the statutory limit in effect on the date of his injury. To determine this issue, we need consider the relationship between only R.C. 4123.58 and 4123.61 as they both existed in 1969, and decide whether the $56 limit in former R.C. 4123.58, like the standard formula for determining AWW in R.C. 4123.61, must also give way in light of the "special circumstances" of this case. * * *
 {¶ 51} After a lengthy discussion of its previous decision inLemke, the Price court found that the commission properly adjusted Price's AWW pursuant to the "special circumstances" exception in R.C. 4123.61. The Price court then states, at ¶ 33-34, 40-41:
This brings us to the pivotal issue in this case, which is whether the commission abused its discretion in subjecting Price's PTD award to the statutory maximum limit in effect in 1969. See former R.C. 4123.58, 132 Ohio Laws, Part I, 1420. The commission recognized the injustice in setting the AWW of a claimant who became permanently and totally disabled in 1997 at $56, based on his earnings 29 years earlier. Nevertheless, the commission ordered that Price's PTD award "be paid at the statutory maximum rate pursuant to the provisions of Section4123.58 of the Revised Code for a 1969 injury claim." In other words, even though substantial justice dictates that for purposes of PTD compensation, Price's AWW be set at $484.44 based on his earnings in 1996, rather than at $56 based on his earnings in 1968, his PTD compensation was nevertheless limited to $56 per week based on a 1969 statutory cap. We find no "substantial justice" in this.
Considering that the Workers' Compensation Act must "be liberally construed in favor of employees," R.C. 4123.95, we cannot accept the notion that the $56 per week limitation on PTD awards in former R.C. 4123.58 was intended to override the portion of R.C. 4123.61 that requires the administrator of workers' compensation to use whatever method of wage calculation that" will enable him to do substantial justice to the claimants." Indeed, we find it implausible that the General Assembly intended a $56 per week maximum limit on PTD compensation in effect in 1969 to apply when determining the probable future earning capacity of a claimant rendered permanently and totally disabled 27 years later.
* * *
* * * [W]e conclude that applying the $56 per week cap on PTD in this case would undermine the purpose of R.C. 4123.61, i.e., to find a fair basis for award for the loss of compensation.
Accordingly, we hold that under the special circumstances of this case, the version of R.C. 4123.58 in effect on the date of Price's industrial injury does not apply in determining his maximum rate of PTD compensation. Instead, Price's PTD award is subject to the statutory provisions of R.C. 4123.58 in effect on the date that his injury forced him from the job market.
 {¶ 52} Thus, the Price court: (1) upheld the commission's resetting of AWW at $484.44 based upon Price's 1996 earnings under the "special circumstances" provision of R.C. 4123.61; and (2) held that the statutory cap found at former R.C. 4123.58 was rendered inapplicable by the application of R.C. 4123.61's "special circumstances" provision in effect in 1969.
 {¶ 53} In State ex rel. Gillette v. Indus. Comm. (2002),95 Ohio St.3d 20, a case that predates Price, the court distinguished Lemke; however, Gillette is instructive here.
 {¶ 54} In Gillette, the claimant, Glenn R. Gillette, injured his knee on September 10, 1990, and his AWW was set at $379.20 based upon his earnings for the year prior to the injury. Gillette had surgery on September 24, 1990, and returned to his job a short time later after collecting benefits from his employer in lieu of temporary total disability compensation.
 {¶ 55} Gillette worked without incident for almost a decade. In 1999, a workplace exacerbation of his knee condition rendered him again unable to return to his former job. He was awarded TTD compensation beginning August 6, 1999. Citing Lemke, Gillette asked the commission to reset his AWW based on the fact that his earnings had increased in the years since his injury. The commission denied the request, and distinguished Lemke.
 {¶ 56} The Gillette court denied a writ of mandamus on several grounds. In the last paragraph of the Gillette
decision, at 22-23, the court states:
Finally, as found by the commission, claimant does not establish special circumstances sufficient to justify a departure from the statutorily mandated calculation. The "special circumstances" provision in R.C. 4123.61 has "generally been confined to uncommon situations." State ex rel. Wireman v.Indus. Comm. (1990), 49 Ohio St.3d 286, 288, 551 N.E.2d 1265. We stated in State ex rel. Cawthorn v. Indus. Comm. (1997),78 Ohio St.3d 112, 114, 676 N.E.2d 886, that an increase in wages over time is not uncommon and does not constitute a "special circumstance."
 {¶ 57} The court's decision in State ex rel. Cawthorn v.Indus. Comm. (1997), 78 Ohio St.3d 112, 114, cited by theGillette court, is instructive here:
The statute [R.C. 4123.61] is significant both for what it does and does not say. The statute provides a standard AWW computation that is to be used in all but the most exceptional cases. It does not authorize the commission to later readjust that figure in order to keep pace with changes in earnings. Claimant here essentially seeks to create a mechanism to produce the latter result by way of R.C. 4123.61's" special circumstances" provision. This we decline to do.
"Special circumstances" is not defined, but special circumstances have "generally been confined to uncommon situations." State ex rel. Wireman v. Indus. Comm. (1990),49 Ohio St.3d 286, 288, 551 N.E.2d 1265, 1267. We note at the outset that it is not uncommon for earnings to change during the course of an employee's career. To the contrary, it is generally anticipated.
 {¶ 58} The court's decision in State ex rel. Clark v. Indus.Comm. (1994), 69 Ohio St.3d 563, is also instructive here. InClark, the claimant, Gladys Clark, returned to the workforce following a lengthy period of unemployment during which she had obtained custody of her granddaughter who was an abused child. Clark was injured during her first month of employment with Bill Knapps when she was working only a couple hours per week in order to see how her granddaughter would adjust to her absence. After her injury at Bill Knapps, Clark obtained full-time employment at Lazarus where she earned substantially more per week than at Bill Knapps. AWW was set by the commission at $20 based upon earnings prior to the date of injury.
 {¶ 59} Citing R.C. 4123.61's provision regarding "special circumstances," the Clark court states:
Two questions are accordingly raised: (1) Did claimant demonstrate" special circumstances" so as to warrant a departure from the standard AWW formula? and (2) If so, is the current AWW substantially just? For the reasons to follow, we answer only the first question in the affirmative.
Id. at 565.
 {¶ 60} The Clark court found that Clark had demonstrated special circumstances and that her AWW as set by the commission was substantially unjust.
 {¶ 61} Here, it is undisputed that AWW for the September 7, 1980 injury was initially set at $510.21 based upon relator's earnings during the year prior to the injury date. Likewise, it is undisputed that AWW for the February 17, 1988 injury was initially set at $605.36 based upon relator's earnings during the year prior to the injury date. It is also undisputed that relator last worked on June 5, 1994.
 {¶ 62} Thus, relator claims that he continued to work for more than six years after his second injury and almost 14 years past his first injury. The SHO calculated AWW at $1,023.03 based upon earnings during 1993 and 1994, i.e., based upon earnings at the time of disability rather than at the date of injury.
 {¶ 63} Relator's AWW nearly doubled during the 14 years between the date of his first injury and the start date of his disability. However, that circumstance is not uncommon.
 {¶ 64} R.C. 4123.58(A) provides that, in cases of permanent total disability, the employee shall be paid compensation in the amount of 66 and two-thirds percent of his AWW, but not more than a maximum amount of weekly compensation which is equal to 66 and two-thirds percent of the statewide average weekly wage ("SAWW").
 {¶ 65} The SAWW for 1988 is $385. Sixty-six and two-thirds percent of that is $256.67. Thus, the maximum amount of weekly compensation payable on a PTD award for a 1988 injury is $256.67. (See appendix to commission's brief.)
 {¶ 66} Sixty-six and two-thirds percent of relator's 1988 AWW is $403.57 ($605.36 x 66 and two-thirds percent = $403.57). Thus, pursuant to R.C. 4123.58(A), relator's PTD rate for his 1988 injury is payable at the statutory maximum of $256.67.
 {¶ 67} The SAWW for the year 1980 is $258. Sixty-six and two-thirds percent of that is $172. (See appendix to commission's brief.) Thus, the maximum amount of weekly compensation payable on a PTD award for a 1980 injury is $172.
 {¶ 68} Sixty-six and two-thirds percent of relator's 1980 AWW is $340.14 ($510.21 x 66 and two-thirds percent = $340.14). Thus, pursuant to R.C. 4123.58(A), relator's PTD rate for his 1980 injury is payable at the statutory maximum of $172.
 {¶ 69} Clearly, nothing in Price indicates that a PTD rate set at a SAWW-based statutory maximum is substantially unjust.
 {¶ 70} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.