[This decision has been published in *Ohio Official Reports* at 97 Ohio St.3d 210.]

THE STATE EX REL. ALESCI, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLEE.

[Cite as *State ex rel. Alesci v. Indus. Comm*., 2002-Ohio-5932.]

*Workers' compensation—Permanent total disability compensation terminated and overpayment declared by Industrial Commission when claimant performed sustained remunerative employment while receiving permanent total disability compensation and Disabled Workers' Relief Fund benefits.*

(No. 2001-1771—Submitted October 15, 2002—Decided November 13, 2002.)

APPEAL from the Court of Appeals for Franklin County, No. 00AP-1410.

_____

**Per Curiam.**

{¶1} Appellant-claimant, Elaine M. Alesci, began receiving permanent total disability compensation ("PTD") on May 5, 1989. On June 20, 2000, the Ohio Bureau of Workers' Compensation moved appellee, Industrial Commission of Ohio, to terminate PTD and to declare an overpayment, alleging that claimant had demonstrated the ability to engage in sustained remunerative employment while receiving both PTD and Disabled Workers' Relief Fund benefits.

{¶2} As evidence of the ability, the bureau showed that claimant had babysat for five families from 1992 through 1996. The evidence did not establish a regular schedule of employment, but rather showed repeated intermittent jobs, often consisting of overnight or multi-night stays. The rate charged was $7 per hour, $80 per weekday, and $100 per weekend day.

{¶3} The bureau also offered evidence of claimant's activities with the Heavy Hitters incentive program, a volunteer enterprise operated through the Cleveland Indians baseball team. Volunteers sold tickets and conducted stadium tours in exchange for points that could be redeemed for all-expense-paid trips to

see the Indians on the road. In May 1996, for example, claimant volunteered 13 days for a total of 55¼ hours, with a typical day involving four or five one-hour-long walking tours. Claimant's hours dropped for the balance of the summer.

{¶4} Melissa Zapanta was the Indians' Coordinator of Community Relations and supervised tour volunteers. She stated that on one occasion, claimant attributed a period of unavailability to outside babysitting obligations and "helping either her brother, Angelo or [Rudolph] Kastelic with a business[.] Alesci stated she would be answering phones."

{¶5} Laura Napoli, Heavy Hitters coordinator, stated that "one day Alesci approached her regarding the filing of the [IRS form] 1099. Napoli stated Alesci inquired about the approximate cost of the trips from last year and expressed concern with completing the 1099, due to her disability status. Napoli stated Alesci told her about her back problems and was on disability so she could not get a 1099. Alesci then asked Napoli if she could fill out the 1099 using her sister, Joanne Presby's, Social Security number instead of her own. This was because Joanne Presby, her sister, would be going on some of the trips with her. Napoli consulted her supervisor, * * * [who] is no longer with the Indian's [sic] organization * * *. [He] stated that he did not have a problem with Alesci's request to use her sister's Social Security number. Napoli relayed the information to Alesci and the subject has not been discussed since then."

{¶6} Additionally, evidence was presented of claimant's activities with Chagrin Valley Construction/Various Insulation Products ("CVC/VIP"). On eight occasions between June 12 and October 17, 1996, claimant was observed entering the offices and was seated behind a desk when bureau investigators entered the premises on October 17, 1996. Their interview with claimant revealed:

{¶7} "Alesci in the initial portion of the interview stated she could not work because of the pain she had in her back, and stated she was only filling in for Patty Alesci, her brother's wife, answering phones for a few hours because their children

were sick. Alesci stated the date of the interview was the last day she would be helping them out. Alesci then provided an employment history which stopped in 1988 because of her BWC claim. Alesci claimed that she strictly answered phones and did no filing or faxing when she filled in at her brother's business. Alesci also denied doing any volunteer work.

{¶8} "After being confronted with evidence against her, Alesci then stated she was being paid $150.00 per week by CVC/VIP, and had done so for the past few months. Her job duties including answering phones, filing, and faxing for both companies. Alesci also admitted to working at Meximilian's [restaurant] for her brother, Anthony Alesci, five to six hour shifts, earning a couple of hundred dollars per week in the late 80's and early 90's. Alesci stated her back flared up on this job.

{¶9} "Alesci also confirmed babysitting for her doctor's [Dr. Sevastos] daughter, Laura Kappos, $7.00 per hour or $60.00 per day. Alesci confirmed she had been babysitting for the past six years. Alesci stated she worked for family members because they would let her stop working any time her back would bother her.

{¶10} "Alesci then requested legal counsel and was permitted to make a phone call to Stuart Garson's office. Alesci stated that her attorney had told her that she was in a lot of trouble and not to sign anything."

{¶11} Investigation also revealed that in a Toyota Motor Credit Corporation lease agreement signed by claimant in January 1996, claimant reported disability income of $1,300 a month and a total monthly income of $1,800.

{¶12} The commission declared an overpayment from May 9, 1992, forward, writing:

{¶13} "The Staff Hearing Officer finds that claimant is no longer permanently and totally disabled since she has engaged in and demonstrated the ability to engage in sustained remunerative employment since 05/09/1992. The

overpayment declared in this claim is ordered to be collected pursuant to the provisions of Ohio Revised Code section 4123.511(J).

{¶14} "The finding that claimant has worked and is able to engage in sustained remunerative employment is based upon the investigation report on file with all attachments including photographic evidence. The Staff Hearing Officer finds that claimant's documented period of employment began on 05/09/1992 when she began performing babysitting work for the Wolfort family. The records on file indicate that claimant had various babysitting positions subsequent to working for the Wolforts. The Staff Hearing Officer finds that claimant demonstrated an ability to engage in sustained employment when she was involved with the Heavy Hitters Club as a guide giving tours of Jacobs Field in 1996. The Staff Hearing Officer finds that on 10/17/1996 claimant admitted to bureau investigators that she worked for Chagrin Valley Construction/Various Insulation Products and she also admitted working at Meximilian's Restaurant. There are also surveillance photographs on file showing that claimant was at Chagrin Valley Construction at various times.

{¶15} "Based upon all of the above, the Staff Hearing Officer finds that claimant has worked and has been able to work since 05/09/1992. The Staff Hearing Officer notes that claimant's own admissions contradict the statements of some of her relatives for whom she was working. The Staff Hearing Officer finds that the investigation could have been concluded more quickly if the parties contacted had cooperated fully and truthfully from the beginning time of the bureau contacts."

{¶16} The Staff Hearing Officer also denied claimant's assertion of laches, finding that claimant had not been materially prejudiced by the elapsed time between motion and hearing.

{¶17} Claimant filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging a commission abuse of discretion. The court of appeals denied the writ, prompting claimant's appeal to this court as of right.

{¶18} PTD is improper when a claimant is either performing sustained remunerative employment or is capable of doing so. *State ex rel. Stephenson v. Indus. Comm.* (1987), 31 Ohio St.3d 167, 170, 31 OBR 369, 509 N.E.2d 946; *State ex rel. Frazier v. Conrad* (2000), 89 Ohio St.3d 166, 169, 729 N.E.2d 723. A claimant who does sustained remunerable activity without pay demonstrates that he /she is capable of doing that same work for remuneration. *State ex rel. Schultz v. Indus. Comm.,* 96 Ohio St.3d 27, 2002-Ohio-3316, 770 N.E.2d 576, at ¶61.

{¶19} In this case, the commission found that, read cumulatively, the evidence supported a finding that claimant had engaged—or was capable of engaging—in sustained remunerative employment over the disputed period. Claimant does not deny her participation in these activities but instead objects to their characterization as either sustained or remunerative. Both challenges fail.

{¶20} The evidence clearly establishes that all of claimant's activities were remunerative. The record shows that she was paid for her child-care services as well as her duties at CVC/VIP. Heavy Hitters also offered compensation; remuneration was simply in the form of all-expense-paid travel rather than cash.

{¶21} The evidence also supports a finding that claimant's activities were sustained. Claimant's ability to lead walking tours for four to five hours at a time belies any assertion that her back condition prohibited all but the most sedentary activity. Moreover, as aptly observed by the magistrate:

{¶22} "Remunerative employment that can be characterized as 'occasional' or 'sporadic' can be some evidence of a capacity for sustained remunerative employment beyond the time periods of the occasional remunerative employment. The bureau was not required to show that relator had engaged, on a sustained basis, a continuous period of remunerative employment since May 9, 1992, as relator seems to suggest. The bureau was only required to show that, as of May 9, 1992, relator had demonstrated a *capacity* for sustained remunerative employment." (Emphasis sic.)

**{¶23}** Finding that "some evidence" supports the termination of PTD, our analysis turns next to the question of overpayment and recovery. R.C. 4123.52's grant of continuing jurisdiction empowers the commission to revisit a prior award and declare an overpayment. Claimant does not contest the commission's ability to recover the full amount of her overpayment if conditions for such recovery have been met, but she denies that the commission has such authority in her case.

**{¶24}** Invocation of continuing jurisdiction requires one of the following: (1) new and changed circumstances subsequent to the initial order, (2) fraud, (3) clerical error, (4) error by an inferior administrative tribunal or subordinate hearing officer, or (5) clear mistake of law. *State ex rel. Bowman v. Indus. Comm.* (1992), 65 Ohio St.3d 317, 319, 603 N.E.2d 1000; *State ex rel. B & C Machine Co. v. Indus. Comm.* (1992), 65 Ohio St.3d 538, 605 N.E.2d 372.

**{¶25}** Discovery of evidence subsequent to a PTD award that claimant is or can engage in sustained remunerative employment is a new and changed circumstance warranting the exercise of continuing jurisdiction. *State ex rel. Smothers v. Mihm* (1994), 69 Ohio St.3d 566, 567-568, 634 N.E.2d 1017. Accordingly, the commission did not abuse its discretion in reopening the prior award and declaring an overpayment.

**{¶26}** Finally, we find that laches does not bar the commission's action. One of its elements is that the party invoking it has been materially prejudiced by the delay of the party asserting the claim. *Smith v. Smith* (1959), 168 Ohio St. 447, 455, 7 O.O.2d 276, 156 N.E.2d 113. Claimant has identified no material prejudice that has occurred to her as the result of any delays allegedly associated with the administrative prosecution of this matter. Accordingly, her argument fails.

**{¶27}** For these reasons, the judgment of the court of appeals is affirmed.

Judgment affirmed.

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____

Garson & Associates Co., L.P.A., and Grace A. Szubski, for appellant.

Betty D. Montgomery, Attorney General, and Cheryl J. Nester, Assistant Attorney General, for appellee.

_____