THE STATE EX REL. SACHDEVA, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO APPELLEE, ET AL.

[Cite as *State ex rel. Sachdeva v. Indus. Comm.,*
102 Ohio St.3d 178, 2004-Ohio-2264.]

(No. 2003–1557—Submitted March 30, 2004—Decided May 19, 2004.)

**Per Curiam.**

{¶ 1} Appellant-claimant, Ashwani K. Sachdeva, injured his right wrist on July 22, 1993, while employed as a fabric cutter for Morning Pride Manufacturing, Inc. After a workers' compensation claim was allowed, he entered a rehabilitation program and began receiving living maintenance benefits.

{¶ 2} After completing the rehabilitation program, claimant found work with Gem One Corporation as a salesperson. He then began receiving living maintenance wage-loss ("LMWL") compensation as set forth in a letter from the Bureau of Workers' Compensation:

{¶ 3} "[Y]our eligibility has been established to receive rehabilitation Living Maintenance Wage Loss payments. Return to work data have been reported to the claims representative handling your claim. To remain eligible, you must be engaged in gainful employment earning at least $272.00 biweekly (based on a 32 hour work week) or $1768.00 per quarter (and no less than $136.00 biweekly if approved for part-time employment).

{¶ 4} "It is your responsibility to submit a completed C–94A (Wage Statement form) along with a copy of the RH–18 to the Bureau of Workers' Compensation * * * to start L.M. Wage Loss payments.  * * *

{¶ 5} "The BWC will calculate the difference between the greater of your full weekly wage or average weekly wage and your new salary, and will pay you 66 2/3 % up to a maximum per week equal to the statewide average weekly wage. Payments may continue for up to a maximum of 200 weeks, but shall be reduced by the corresponding number of weeks in which you receive payments pursuant to Division (B) of the Ohio Revised Code, Section 4123.56."

{¶ 6} Claimant submitted the forms as required, and from June 7, 1998, through October 25, 1998, he listed Gem One as his sole employer. An anonymous tip to the bureau, however, sparked an investigation that revealed that claimant was also working a second job as a fabric cutter with Fred J. Miller, Inc. A Miller supervisor reported that claimant had specifically asked that his name not be listed on the company payroll and that his earnings be included in his wife's paycheck, as she also worked for Miller. The arrangement was agreed upon, and claimant, in submitting his LMWL forms to the bureau, consistently

averred that his earnings at Gem One accurately reflected his total income for the period.

{¶ 7} As a result of his nondisclosure, claimant received more LMWL compensation than was justified. The bureau moved appellee, Industrial Commission of Ohio, for declarations of fraud and overpayment. The commission granted the bureau's request and declared an overpayment of all LMWL paid from June 7, 1998, through October 25, 1998. It also found that claimant had committed fraud.

{¶ 8} Objecting to both findings, claimant turned to the Court of Appeals for Franklin County, seeking a writ of mandamus. The court of appeals concurred in the commission's analysis and upheld its order, prompting claimant's appeal to this court as of right.

{¶ 9} Claimant does not dispute that he concealed from the bureau that he had earned income from Fred J. Miller, Inc., and that as a result, he had received more compensation than he was entitled to. Claimant also does not dispute that he had a duty to reveal his income from Miller. To these two salient facts claimant is nonresponsive, focusing instead on the LMWL eligibility of claimants engaging in duties compatible with the former position of employment. He does not seem to grasp that even if his Miller employment did not foreclose LMWL compensation, he still lied to the bureau about his income and, as a result, received a higher benefit amount than was justified. We thus concur in the commission's declaration of fraud, finding that the elements of fraud, as set forth in *Gaines v. Preterm–Cleveland, Inc.* (1987), 33 Ohio St.3d 54, 514 N.E.2d 709, were met.

{¶ 10} This leaves the issue of the amount of overpayment. The commission vacated the entire award over the disputed period. Claimant argues that some weeks during the disputed time he made less than he had before his injury, even when the undisclosed income is included. He therefore advocates that he was overpaid $930.84, not $4,836.40, as calculated by the bureau. Claimant's argument is meritless for two reasons.

{¶ 11} First, claimant's ability to perform the duties of his former position of employment, as demonstrated by his fabric-cutting job at Miller, *did* preclude claimant's entitlement to LMWL compensation. Claimant's assertion to the contrary is based on his contention that a causal relationship between injury and diminished wages is not expressly stated in relevant Administrative Code and Revised Code sections and is, therefore, not required. We disagree. Causal relationship between injury and wage loss is the cornerstone of the workers' compensation system, and it does not exist in a LMWL situation in which a claimant is medically capable of resuming his former job duties. A return to the former job would eliminate the wage loss. When a claimant could return but

does not, any diminished earnings are related to a personal decision, not a medical one.

{¶ 12} Second, the overpayment in this case did not result from mistake or inadvertence. It was due to claimant's deliberate withholding of information from the bureau. When overpayment has been precipitated by a claimant's concealment of activities that would affect compensation eligibility, we have routinely affirmed the commission's determination of overpayment, regardless of whether there was an accompanying fraud declaration. In cases where allegedly totally disabled claimants have been caught working while drawing compensation, we have consistently upheld the commission's decision to vacate the entire award—or much of it—even when intermittent employment has prevented the commission from pinpointing the exact dates of prohibited activity. In *State ex rel. Alesci v. Indus. Comm.*, 97 Ohio St.3d 210, 2002-Ohio-5932, 777 N.E.2d 835, for example, sporadic employment that claimant had concealed from the bureau was sufficient to invalidate an entire permanent total disability award subsequent to the first confirmed incident of employment. An equally expansive declaration of overpayment was upheld in *State ex rel. Kirby v. Indus. Comm.*, 97 Ohio St.3d 427, 2002-Ohio-6668, 780 N.E.2d 275. There, the claimant, who had been declared permanently totally disabled, began regularly performing paid home improvement and maintenance jobs in 1991. Each year from 1997 through 2000, he specifically denied to the bureau that he had engaged in any work, and he continued to deny that he had had sustained remunerative work until confronted with the evidence against him. Id. at ¶ 5–6. Again, despite the bureau's inability to identify the dates on which he had worked, we affirmed the commission's finding of overpayment of all compensation paid after 1991.

{¶ 13} The present claimant, in effect, asks that we require the commission to do the very thing we declined to require of it in *Kirby* and *Alesci*: pick through records from the relevant time frame and assess overpayment only for those weeks that he profited from his dishonesty. We refuse.

{¶ 14} The judgment of the court of appeals is affirmed.

Judgment affirmed.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

---

Thompson, Meier & Dersom and Adam H. Leonatti, for appellant.

Jim Petro, Attorney General, and Gerald H. Waterman, Assistant Attorney General, for appellee.