The STATE of Ohio ex rel. LYNCH

v.

INDUSTRIAL COMMISSION OF OHIO et al.

[Cite as *State ex rel. Lynch v. Indus. Comm.*, 171 Ohio App.3d 453, 2007-Ohio-292.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 05AP–1233.

Decided Jan. 25, 2007.

454

Ward, Kaps, Bainbridge, Maurer & Melvin, L.L.C., Paul F. Ward, and William J. Melvin, for relator.

Marc Dann, Attorney General, and Douglas R. Unver, Assistant Attorney General, for respondent Industrial Commission of Ohio.

Travis, Judge.

{¶ 1} In this original action, relator, Henry Lynch, seeks a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order that terminated relator's permanent total disability ("PTD") compensation and declared an overpayment of compensation beginning January 31, 1994, and to reinstate relator's PTD compensation.

{¶ 2} Relator was born on January 6, 1932, and in 1967 was employed by Brookside Country Club, a state-fund employer located in Canton, Ohio. On March 16, 1967, relator suffered an industrial injury in the course of his employment. The injury was given claim No. 67–29813 and was allowed for "fracture[d] odontoid process [at] C–2 with forward subluxation C–1 on C–2." Subsequently, the commission found that relator was permanently and totally disabled.

{¶ 3} On July 16, 1997, a criminal complaint was filed against relator in the United States District Court, Northern District of Ohio. Among other things, the complaint alleged that from January 1, 1994 to July 17, 1997, relator did:

> [C]onspire to distribute cocaine and/or cocaine base and to possess with intent to distribute cocaine and/or cocaine base; knowingly and intentionally use the telephone to distribute cocaine and/or cocaine base or to cause or facilitate the distribution of cocaine and/or cocaine base; and knowingly and intentionally distribute cocaine and/or cocaine base (crack cocaine) and possess cocaine and/or cocaine base with the intent to distribute in violation of Title 21 United States Code, Section(s) 846, 843(b), 841(a)(1).

{¶ 4} Attached to the complaint was an affidavit executed by special agent Kenneth A. Myers on July 16, 1997. The affidavit provided a general background of Myers's experience in the investigation of illegal drug sales and the investigation of a number of persons in the area of Canton, Ohio, for the illegal sale of cocaine. Summaries of conversations and telephone calls, some of which involved relator, were included. In addition, the affidavit recites information from confidential sources that relator had been selling cocaine since 1992. One source claimed weekly purchases of $300 to $400 worth of cocaine from relator between 1992 and 1994, while another claimed that relator sold large amounts of narcotics from his home.[1] In addition, relator was convicted of drug trafficking in Columbiana County, Ohio, in 1994.

{¶ 5} The stipulated record also includes an 81–count indictment that accused relator and others of having committed various federal offenses. Relator was charged with conspiracy to possess cocaine with the intent to distribute, using a telephone to facilitate the distribution of cocaine, selling cocaine, and owning and maintaining a house for the purpose of using and distributing cocaine.[2]

{¶ 6} In December 1997, relator entered a guilty plea to count one, conspiracy to possess cocaine with the intent to distribute cocaine, in violation of Section 846(a)(1), Title 21, U.S.Code. On December 10, 1997, agents of the Special Investigations Unit of the Ohio Bureau of Workers' Compensation ("BWC"), received a copy of the criminal complaint, affidavit, and indictment. On January

1. Stipulation of evidence, Volume II, ¶ 23–24.

2. Although the indictment alleged a time frame from 1994 through 1997, the specific charges involving relator occurred during June and July 1997. Of the 81 counts, three counts (26, 33 and 55) charged that relator sold cocaine on June 18, June 24, and July 2, 1997. Twenty-six counts charged relator with using a telephone to facilitate the distribution of cocaine during June and July 1997. Count 79 charged that the July 2, 1997 sale subject of count 55 was made within 1,000 feet of a school. Count 76 charged that relator owned and kept a house for the purpose of distribution and use of cocaine. The remaining 50 counts involved other persons.

29, 1998, the BWC moved to terminate relator's PTD compensation and to declare an overpayment of benefits based on the fact that relator was engaged in a continuing criminal enterprise for profit and, thus, was engaged in sustained remunerative employment.

{¶ 7} On March 10, 1998, a staff hearing officer ("SHO") of the commission conducted a hearing. Relator was incarcerated at the time. Notice of the hearing was sent to the address provided by relator when he applied for PTD, but was not sent to relator at his place of incarceration. As a result, no one appeared on relator's behalf at the hearing. On March 19, 1998, a staff hearing officer ("SHO") issued an order that terminated relator's benefits and declared an overpayment effective January 31, 1994.

{¶ 8} Approximately six years later, on June 10, 2004, relator moved for relief from the commission's order terminating his PTD. Relator sought invocation of the commission's continuing jurisdiction under R.C. 4123.52. Relator also sought relief under R.C. 4123.522 because he had not received notice of the March 10, 1998 hearing. On August 30, 2004, SHO conducted a hearing on relator's request for relief. Although relator had not filed a change of address with the commission, relator's wife had advised the commission that relator was incarcerated and provided the location of his incarceration. The relevant portions of the order are as follows:

> The injured worker's request to vacate the 03/10/1998 Staff Hearing Officer hearing and order is denied. The injured worker did fail to receive notice of the 03/10/1998 hearing. This failure was due to his own fault. He was incarcerated since 07/05/1997, and had failed to notify the Industrial Commission and Bureau of Workers' Compensation of his change of address. Therefore, the notice for the 03/10/1998 hearing had been correctly mailed to the address (P.O. Box 20004, Canton, Ohio 44701–0004) that the injured worker had instructed per his change of address form filed 01/28/1998. Therefore the request for Ohio Revised Code 4123.52 relief is denied.
>
> However, the request for Ohio Revised Code 4123.522 relief is granted. The 03/08/1998 CSS note in file records that the injured worker's wife on that date told the Bureau of Workers' Compensation that her husband was incarcerated, and she gave the Bureau of Workers' Compensation the correct incarceration address. Therefore, the order from the 03/10/1998 Staff Hearing Officer hearing should have been mailed to the location of incarceration.
>
> Therefore, it is found that the injured worker on 06/10/2004 timely filed a request for reconsideration to the 03/10/1998 Staff Hearing Officer order. This claim is referred to the Industrial Commission Legal Services Section to screen the injured worker's request for reconsideration filed 06/10/2004.

{¶ 9} On April 9, 2005, the commission issued an interlocutory order stating that relator's request for reconsideration would be set for hearing "to determine if the alleged mistake of law as noted herein is sufficient for the Industrial Commission to invoke its continuing jurisdiction." The "alleged mistake of law" refers to relator's claim that the March 19, 1998 order which terminated PTD contained a clear mistake of law: the holding that relator's continuing criminal enterprise for profit was sustained remunerative employment.

{¶ 10} On June 8, 2005, the commission made the following findings and upheld the SHO order mailed on March 19, 1998:

> It is the finding of the Commission that it does not have authority to invoke continuing jurisdiction, pursuant to R.C. 4123.52 and the case law of *State ex rel. Nicholls v. Indus. Comm.* (1998), 81 Ohio St.3d 454, 692 N.E.2d 188; and *State ex rel. Foster v. Indus. Comm.* (1999), 85 Ohio St.3d 320, 707 N.E.2d 1122. It is further the finding of the Commission that the injured worker has failed to meet his burden of proving that the Staff Hearing Officer order, dated 03/19/1998, contains a clear error of such character that remedial action would clearly follow. Therefore, the injured worker's request for reconsideration, filed 06/10/2004, is denied and the order of the Staff Hearing Officer, dated 03/19/1998, remains in full force and effect.

{¶ 11} Relator filed the within mandamus action on November 7, 2005. The matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M). On July 25, 2006, the magistrate issued a decision that included findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate held that "(1) the commission properly invoked its continuing jurisdiction over the PTD award at the March 10, 1998 hearing before the SHO and (2) the commission's determination that relator has been engaged in sustaining remunerative employment beginning January 31, 1994 is supported by some evidence." The magistrate recommended that the requested writ of mandamus be denied. Relator timely objected to the magistrate's decision.

{¶ 12} Relator objects to the magistrate's decision on three grounds. First, relator believes that the magistrate failed to apply the correct standard when analyzing the SHO order mailed March 19, 1998. Relator argues that the SHO order failed to properly identify and explain the basis for exercising continuing jurisdiction as required by decisions of the Supreme Court of Ohio.[3] Second, relator objects to the magistrate's finding that sustained remunerative employment, as used in workers' compensation cases, includes continuing criminal

---

3. See *State ex rel. Nicholls v. Indus. Comm.* (1998), 81 Ohio St.3d 454, 692 N.E.2d 188; *State ex rel. Foster v. Indus. Comm.* (1999), 85 Ohio St.3d 320, 707 N.E.2d 1122; and *State ex rel. Gobich v. Indus. Comm.*, 103 Ohio St.3d 585, 2004-Ohio-5990, 817 N.E.2d 398.

activity for profit. Finally, relator objects to the magistrate's conclusion that the order of the commission properly invoked continuing jurisdiction and was supported by some evidence.

{¶ 13} An award of benefits for PTD compensation of an injured worker is governed by R.C. 4123.58. Initially, the claimant bears the burden to prove that the inability to perform sustained remunerative employment arises exclusively from the allowed conditions. *State ex rel. Wean United, Inc. v. Indus. Comm.* (1993), 66 Ohio St.3d 272, 611 N.E.2d 828. Once the claimant's initial burden is met and an award of PTD is made, the award continues until death, and the injured worker is under no obligation to provide additional evidence of disability. "The lifetime nature of the award negates the need for continuing medical proof on claimant's behalf." *State ex rel. Smothers v. Mihm* (1994), 69 Ohio St.3d 566, 567, 634 N.E.2d 1017.

{¶ 14} The purpose of PTD benefits is to compensate an injured worker for the impairment of the worker's earning capacity as a result of an industrial accident. " 'Permanent total disability' means the inability to perform sustained remunerative employment due to the allowed conditions in the claim." Ohio Adm.Code 4121-3-34(B)(1). An award of PTD is not based upon need or the financial status of the injured worker; instead, PTD is based on the fact that the worker can no longer perform work for monetary compensation. It is the impairment of earning capacity that is compensable. The financial status of the injured worker is immaterial to the question of whether the injury impaired earning capacity.

{¶ 15} Although an award of PTD is for life, that does not mean that the award is immune from later review. If the commission learns of new and changed circumstances, actual employment, or evidence of activity inconsistent with the claimant's PTD status, the commission can invoke its continuing jurisdiction under R.C. 4123.52 to reopen the matter. *Smothers,* 69 Ohio St.3d at 567–568, 634 N.E.2d 1017.

{¶ 16} In his first objection, relator states that the magistrate failed to apply the correct standard for the commission to assert reconsideration jurisdiction. Relator argues that the magistrate's decision essentially applies different standards for reconsideration jurisdiction and continuing jurisdiction. Underlying this objection is relator's belief that the commission orders failed to clearly identify the basis for continuing jurisdiction. See *Nicholls,* 81 Ohio St.3d 454, 692 N.E.2d 188; *Foster,* 85 Ohio St.3d 320, 707 N.E.2d 1122; and *Gobich,* 103 Ohio St.3d 585, 817 N.E.2d 398.

{¶ 17} The power of the commission to reconsider a previous decision flows from the general grant of continuing jurisdiction in R.C. 4123.52. *State ex rel.*

*Royal v. Indus. Comm.* (2002), 95 Ohio St.3d 97, 99, 766 N.E.2d 135. Whether denominated as continuing jurisdiction or reconsideration jurisdiction, the standard is the same. See *Gobich,* 103 Ohio St.3d 585, 817 N.E.2d 398, at ¶ 14 ("The commission's power to reconsider a previous decision derives from its general grant of continuing jurisdiction under R.C. 4123.52"). We do not read the magistrate's decision as applying different standards for reconsideration versus continuing jurisdiction.

{¶ 18} The power to exercise continuing jurisdiction over workers' compensation claims is derived from R.C. 4123.52. Continuing jurisdiction is not unlimited and cannot be exercised indiscriminately. The prerequisites to the exercise of continuing jurisdiction or to reconsider an earlier commission order include (1) new and changed circumstances, (2) fraud, (3) clear mistake of fact, (4) clear mistake of law, or (5) error by an inferior tribunal. *Nicholls,* 81 Ohio St.3d 454, 692 N.E.2d 188. One or more of the prerequisites must be clearly identified in any commission order that seeks to exercise continuing or reconsideration jurisdiction. *Gobich,* 103 Ohio St.3d 585, 817 N.E.2d 398, at ¶ 14–15.

{¶ 19} The prerequisite under which the commission claims continuing or reconsideration jurisdiction must be clearly stated in any commission order seeking to exercise continuing jurisdiction over a claim. "This insures that the party opposing reconsideration can prepare a meaningful defense to the assertion that continuing jurisdiction is warranted." Id. at ¶ 15; *Royal,* 95 Ohio St.3d at 100, 766 N.E.2d 135. The identification and explanation of the prerequisite upon which continuing jurisdiction is sought "also permit[ ] a reviewing court to determine whether continuing jurisdiction was properly invoked." *Gobich,* at ¶ 15.

{¶ 20} The SHO mailed notice of the March 10, 1998 hearing to all parties.[4] The order mailed on March 19, 1998 explained the purpose of the hearing: "C–86 Motion filed by BWC on 01/29/1998. Issue: 1) Terminate Permanent Total–Declare PTD Overpayment." Because the hearing was held before *Nicholls, Foster,* and *Gobich* were decided, it is not surprising that the SHO order did not expressly state that the hearing would be on a question of new and changed circumstances, i.e., whether relator's criminal enterprise was evidence that relator had engaged in sustained remunerative employment.[5] However, the order

4. As noted, notice was sent to the address relator listed when he applied for PTD. However, because he was in prison, he did not receive notice of the March 10, 1998 hearing.

5. *Nicholls* was decided on April 22, 1998, *Foster* on January 12, 1999, and *Gobich* on November 24, 2004. Ultimately, however, relator was granted reconsideration after the commission recognized that he had not been given notice of the March 10, 1998 hearing. See SHO finding and order mailed September 3, 2004, stipulated record, at 6. Therefore, when

clearly set out the nature of the issue that was before the commission and specifically found that relator was "engaged in criminal activities for profit * * * which constitutes sustained remunerative employment."

{¶ 21} On June 10, 2004, relator was represented by counsel when he moved for reconsideration of the March 19, 1998 order that terminated his PTD award. Relator proposed in his motion for reconsideration that the SHO had made a "clear mistake of law" in the March 19, 1998 decision and order. Therefore, at the time he moved for reconsideration, relator obviously knew the precise issue before the commission and the claimed basis for the exercise of continuing jurisdiction.

{¶ 22} In response to relator's motion for reconsideration, the interlocutory order issued on April 9, 2005, set out the issues to be considered by the commission: (1) whether relator performed sustained remunerative work during the period when he was receiving PTD benefits and (2) whether the SHO made a clear mistake of law by holding that relator was engaged in sustained remunerative work. Accordingly, the basis for the claim of continuing jurisdiction was clearly articulated. The order of June 8, 2005, which denied relator's motion for reconsideration, clearly informs us that "the injured worker has failed to meet his burden of proving that the Staff Hearing Officer order, dated 03/19/1998, contains a clear error of such character that remedial action would clearly follow." Since the only question before the commission was the validity of the March 19, 1998 finding that relator's criminal enterprise was sustained remunerative employment, we are able to perform an adequate judicial review of the proceedings. *Gobich,* 103 Ohio St.3d 585, 817 N.E.2d 398, at ¶ 15. Hence, we conclude that the prerequisite for invoking the continuing jurisdiction of the commission was adequately articulated and explained by the commission. The order complies with the holdings of *Nicholls, Foster,* and *Gobich.* Therefore, we overrule relator's first objection to the magistrate's decision.

{¶ 23} Relator's second and third objections to the magistrate's decision are based upon relator's belief that continued criminal activity does not amount to sustained remunerative employment, as that term is used in workers' compensation law. Relator does not contest that he was convicted of conspiracy to possess and distribute cocaine in violation of Section 846, Title 21, U.S.Code. Relator does not contest the evidence that he was engaged in the illicit sale of drugs over a substantial period of time. Instead, relator maintains that criminal activity is

---

the commission gave notice on April 9, 2005, that it would consider relator's application for reconsideration, filed on June 10, 2004, and consider the issue of continuing jurisdiction and termination of permanent total disability, the rule of *Nicholls, Foster,* and *Gobich* was well known.

not sustained remunerative employment for purposes of workers' compensation law, and, therefore, there is no evidence to support the commission's order.

{¶ 24} PTD is the inability to perform sustained remunerative employment. Evidence that an injured worker is performing or is capable of performing sustained compensable work may demonstrate that new and changed circumstances merit reexamination of the earlier decision to grant the award. *Smothers,* 69 Ohio St.3d 566, 634 N.E.2d 1017; *State ex rel. Cuyahoga Hts. Local School Dist. Bd. of Edn. v. Johnston* (1979), 58 Ohio St.2d 132, 12 O.O.3d 128, 388 N.E.2d 1383. The terms "sustained" and "work" have not been conclusively defined for workers' compensation purposes. *State ex rel. Lawson v. Mondie Forge,* 104 Ohio St.3d 39, 2004-Ohio-6086, 817 N.E.2d 880, at ¶ 19. Whether an award for PTD is appropriate, either initially or upon review of new and changed circumstances, boils down to a single question: Is the claimant capable of sustained remunerative employment?

> Payment of PTD is inappropriate where there is evidence of (1) actual sustained remunerative employment, (2) the physical ability to do sustained remunerative employment, or (3) activities so medically inconsistent with the disability evidence that they impeach the medical evidence underlying the award.

(Citations omitted.) *Lawson,* at ¶ 16. Thus, evidence that a claimant is actually performing sustained remunerative employment automatically demonstrates that the claimant is not totally disabled. No additional evidence is needed. Employment need not be on a regular daily basis. "[E]vidence of even irregular employment can support the presumption that claimant is indeed either doing—or is capable of doing—sustained remunerative employment." *State ex rel. Kirby v. Indus. Comm.,* 97 Ohio St.3d 427, 2002-Ohio-6668, 780 N.E.2d 275, at ¶ 10.

{¶ 25} We reject relator's argument that engaging in a continuing criminal enterprise for profit is not sustained remunerative employment. There is no logical reason to differentiate between employment in a lawful business or industry and employment in an unlawful business or industry. The department store employee who sells products offered by the employer is no different in terms of sustained activity from the employee of a drug dealer who sells crack cocaine on the dealer's behalf. Both perform sustained labor. Both are paid for their labor. Hence, each is engaged in sustained remunerative employment.

{¶ 26} Individual criminal acts may not necessarily prove that an injured worker is capable of sustained employment. However, when the evidence shows that the injured worker is actually performing sustained work and being paid for it, there is no reason to ignore the evidence simply because the employment involves an unlawful activity. We hold that PTD compensation is inappropriate when there is evidence that an injured worker is actually engaged in sustained

remunerative employment, whether the employment involves lawful or unlawful activities. Cf. *Lawson*, 104 Ohio St.3d 39, 2004-Ohio-6086, 817 N.E.2d 880, at ¶ 16.

{¶ 27} *State ex rel. Brown v. Indus. Comm.* (1993), 68 Ohio St.3d 45, 623 N.E.2d 55, does not support relator's premise. In *Brown*, the injured worker was granted an award of PTD in 1972 following an industrial accident. In 1989, the injured worker was incarcerated following conviction for a criminal offense. The commission terminated payment of the PTD award because of the incarceration. This court disagreed. *Brown* does not hold that evidence of criminal activity is not evidence that the injured worker is actually capable of performing sustained remunerative activity. *Brown* simply held that incarceration alone was not a basis to terminate an award of PTD.

{¶ 28} When the record contains some evidence to support the factual findings of the commission, those findings will not be disturbed on review. *State ex rel. Dodson v. Indus. Comm.* (1980), 62 Ohio St.2d 408, 409–410, 16 O.O.3d 439, 406 N.E.2d 513, and cases cited therein. The Rules of Evidence do not apply to proceedings before the commission. R.C. 4123.10. "By its unequivocal terms, R.C. 4123.10 grants the commission considerable discretion regarding the evidence which it considers, thus negating [the] argument[s] that [an] affidavit was improperly considered." *State ex rel. Roberts v. Indus. Comm.* (1984), 10 Ohio St.3d 1, 5, 10 OBR 1, 460 N.E.2d 251. The commission has broad authority to determine what type of evidence it will consider. "[B]y virtue of R.C. 4123.10, the commission is vested with the authority to admit and consider materials of a quasi-evidentiary nature." Id.

{¶ 29} In this case, there is "some evidence" to support the commission's order. The affidavit submitted includes information that relator sold drugs to one individual on a weekly basis from 1992 to 1995.[6] At the stated amount of $300 to $400 per week, the income from those sales alone supports the commission's finding that relator was engaged in sustained remunerative employment. Additionally, the affidavit sets forth relator's participation in conversations and telephone calls that discuss the sale of cocaine, and relator participated in the actual sale of cocaine from his home. Finally, relator pleaded guilty to count one of the criminal indictment, a judicial admission that he conspired to possess and distribute cocaine from 1994 through 1997. Therefore, there is some evidence that relator was engaged in selling drugs on a regular basis from 1992 through

6. Because normal evidentiary rules do not apply to proceedings before the commission and because the commission is authorized to consider "quasi-evidence," the hearsay statements contained in the affidavit submitted by FBI agent Myers amount to "some evidence" that supports the commission order.

1997. The evidence supports the commission's finding that relator was engaged in sustained remunerative employment during the time that he was receiving benefits for permanent total disability. Relator's second and third objections to the magistrate's decision are overruled.

{¶ 30} Pursuant to Civ.R. 53(E)(4), we have conducted a complete review of the magistrate's decision. For the reasons stated, we overrule relator's objections to the magistrate's decision and deny the request for a writ of mandamus.

Objections overruled;
writ of mandamus denied.

BRYANT and MCGRATH, JJ., concur.

**(APPENDIX A)**

MACKE, Magistrate.

{¶ 31} In this original action, relator, Henry Lynch, requests a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order terminating his award of permanent total disability ("PTD") compensation and declaring an overpayment, and to enter into an order reinstating the PTD award.

Findings of Fact:

{¶ 32} 1. On March 16, 1967, relator sustained an industrial injury which was allowed for "fractured odontoid process at C–2 with forward subluxation C–1 on C–2" and was assigned claim number 67–29813. The employer of record is a state-fund employer.

{¶ 33} 2. Subsequent to the injury, the commission awarded relator PTD compensation.

{¶ 34} 3. On or about December 10, 1997, agents of the Akron Special Investigations Unit ("SIU") of the Ohio Bureau of Workers' Compensation ("bureau") obtained a copy of a criminal complaint filed in the United States District Court, Northern District of Ohio on July 16, 1997 against relator. The criminal complaint was signed by special agent Kenneth A. Myers of the Federal Bureau of Investigation ("FBI").

{¶ 35} 4. The criminal complaint alleged that from January 1, 1994, to July 17, 1997, relator did:

> conspire to distribute cocaine and/or cocaine base and to possess with intent to distribute cocaine and/or cocaine base; knowingly and intentionally use the telephone to distribute cocaine and/or cocaine base or to cause or facilitate the distribution of cocaine and/or cocaine base; and knowingly and intentionally distribute cocaine and/or cocaine base (crack cocaine) and possess cocaine

and/or cocaine base with the intent to distribute in violation of Title 21 United States Code, Section(s) 846, 843(b), 841(a)(1).

{¶ 36} 5. The criminal complaint further states that it is based upon facts described in an attached affidavit.

{¶ 37} 6. The affidavit attached to the criminal complaint is the 71–page affidavit of special agent Myers executed July 16, 1997. It is contained in the record before this court.

{¶ 38} 7. At page 17 of the Myers affidavit, at paragraphs 23 and 24, Myers avers:

23. In December, 1996, CS–3 advised that * * * HENRY LYNCH, sells large amounts of narcotics for * * * out of his residence * * *. This information provided by CS–3, has been corroborated by numerous sources of the Canton Police Department and the SCVCFTF [Stark County, Ohio Violent Crimes/Fugitive Task Force].

24. In March, 1997, CS–4 advised that from approximately 1992 to 1994, CS–4 bought $300.00 to $400.00 worth of crack cocaine per week from HENRY LYNCH. In 1994, CS–4 began buying crack cocaine from HENRY LYNCH about twice a month until early 1995 and sporadically thereafter.

{¶ 39} 8. At page 18 of the Myers affidavit, at paragraph 26, Myers avers:

26. On June 18, 1997, June 24, 1997 and July 2, 1997, CS–4 made controlled purchases of small amounts of crack cocaine from HENRY LYNCH, * * *. The substances were submitted to the Canton–Stark County Crime Laboratory and tested positive for crack cocaine (base).

{¶ 40} 9. At page 18 of the Myers affidavit, at paragraph 28, Myers avers:

28. * * * CS–5 stated that HENRY LYNCH also is involved in the drug trafficking business and has numerous cars and houses in his name.

{¶ 41} 10. The SIU agents also obtained a copy of an indictment filed in the United States District Court, Northern District of Ohio, against relator and others.

{¶ 42} 11. On January 29, 1998, the bureau moved to terminate the PTD award and for a declaration of an overpayment.

{¶ 43} 12. Following a March 10, 1998 hearing, a Staff Hearing Officer ("SHO") mailed an order on March 19, 1998, terminating the PTD award and declaring an overpayment. The SHO's order explains:

It is the order of the Staff Hearing Officer that the BWC's Motion, filed 01/29/1998, is granted to the extent of this order.

Based on the Criminal Complaint in file, signed 7/16/97 by Special Agent of the F.B.I., Kenneth A. Myers, this Hearing Officer finds that the Claimant has

been engaged in criminal activities for profit, which constitutes sustained remunerative employment, from at least 1/31/94 through 7/17/97.

By engaging in such activities, as are described in said Criminal Complaint, this Hearing Officer finds that the Claimant's right to Permanent Total Disability benefits terminated as of 1/31/94.

Therefore, this Hearing Officer orders the Claimant's Permanent Total Disability compensation terminated effective 1/31/94. All Permanent Total Disability compensation paid on, or after 1/31/94, is an overpayment, and is to be collected pursuant to O.R.C. Section 4123.511(J).

{¶ 44} 13. On June 10, 2004, relator moved for relief pursuant to R.C. 4123.52 and 4123.522.

{¶ 45} 14. Following an August 30, 2004 hearing, an SHO issued an order stating:

It is the order of the Staff Hearing Officer that the Injured Worker's motion, filed 06/10/2004, is granted in part and denied in part as follows:

The injured worker's request to vacate the 03/10/1998 Staff Hearing Officer hearing and order is denied. The injured worker did fail to receive notice of the 03/10/1998 hearing. This failure was due to his own fault. He was incarcerated since 07/05/1997, and had failed to notify the Industrial Commission and Bureau of Workers' Compensation of his change of address. Therefore, the notice for the 03/10/1998 hearing had been correctly mailed to the address (P.O. Box 20004, Canton, Ohio 4471–0004) that the injured worker had instructed per his change of address form filed 01/28/1998. Therefore the request for Ohio Revised Code 4123.52 relief is denied.

However, the request for Ohio Revised Code 4123.522 relief is granted. The 03/08/1998 CSS note in file records that the injure worker's wife on that date told the Bureau of Workers' Compensation that her husband was incarcerated, and she gave the Bureau of Workers' Compensation the correct incarceration address. Therefore the order from the 03/10/1998 Staff Hearing Officer hearing should have been mailed to the location of incarceration.

Therefore, it is found that the injured worker on 06/10/2004 timely filed a request for reconsideration to the 03/10/1998 Staff Hearing Officer order. This claim is referred to the Industrial Commission Legal Services Section to screen the injured worker's request for reconsideration filed 06/10/2004.

{¶ 46} 15. On April 9, 2005, the three-member commission mailed an interlocutory order stating:

The Injured Worker's request for reconsideration, filed 06/10/2004, from the Staff Hearing Officer order, issued 03/19/1998, is referred to the Commission

Level Hearings Section to be docketed before the Members of the Industrial Commission. The issues to be heard are:

1. The Injured Worker's request for the Industrial Commission to invoke its continuing jurisdiction pursuant to Ohio revised Code 4123.52, and

2. Issue:

1) Continuing Jurisdiction Pursuant to R.C. 4123.52

2) Terminate Permanent Total–Declare PTD Overpayment

It is the finding of the Industrial Commission that the Injured Worker has presented evidence of sufficient probative value to warrant adjudication of the request for reconsideration regarding the alleged presence of a clear mistake of law of such character that remedial action would clearly follow.

Specifically, it is alleged that the injured worker did not perform sustained remunerative employment, contrary to the findings of the Staff Hearing Officer in the 03/19/1998 order. This matter was referred for reconsideration review by Staff Hearing Officer decision dated 08/30/2004, granting the injured worker relief pursuant to R.C. 4123.522.

Based on these findings, the Industrial Commission directs that the Injured Worker's request for reconsideration filed 06/10/2004 is to be set for hearing to determine if the alleged mistake of law as noted herein is sufficient for the Industrial Commission to invoke its continuing jurisdiction.

In the interests of administrative economy and for the convenience of the parties, after the hearing on the question of continuing jurisdiction, the Industrial Commission will take the matter under advisement and proceed to hearing the merits of the underlying issue. The Industrial Commission will thereafter issue an order on the matter of continuing jurisdiction under Ohio Revised Code 4123.52. If authority to invoke continuing jurisdiction is found, the Industrial Commission will address the merits of the underlying issue.

This order is issued pursuant to *State ex rel. Nicholls v. Indus. Comm.* (1998), 81 Ohio St.3d 454, 692 N.E.2d 188, *State ex rel. Foster v. Indus. Comm.* (1999), 85 Ohio St.3d 320, 707 N.E.2d 1122, and in accordance with Ohio Administrative Code 4121–3–09.

{¶ 47} 16. Following a May 10, 2005 hearing, the three-member commission mailed an order on June 8, 2005, stating:

After further review and discussion, it is the decision of the Industrial Commission that the injured worker's request for reconsideration, filed 06/10/2004, is denied and that the order of the Staff Hearing Officer, dated 03/19/1998, remains in full force and effect.

It is the finding of the Commission that it does not have authority to invoke continuing jurisdiction, pursuant to R.C. 4123.52 and the case law of *State ex*

*rel. Nicholls v. Indus. Comm.* (1998), 81 Ohio St.3d 454, 692 N.E.2d 188; and *State ex rel. Foster v. Indus. Comm.* (1999), 85 Ohio St.3d 320, 707 N.E.2d 1122. It is further the finding of the Commission that the injured worker has failed to meet his burden of proving that the Staff Hearing Officer order, dated 03/19/1998, contains a clear error of such character that remedial action would clearly follow. Therefore, the injured worker's request for reconsideration, filed 06/10/2004, is denied and the order of the Staff Hearing Officer, dated 03/19/1998, remains in full force and effect.

{¶ 48} 17. On November 7, 2005, relator, Henry Lynch, filed this mandamus action.

Conclusions of Law:

{¶ 49} Two issues are presented: (1) whether the commission properly invoked its continuing jurisdiction over the PTD award at the March 10, 1998 hearing before the SHO and (2) whether the commission's determination that relator has been engaged in sustaining remunerative employment beginning January 31, 1994 is supported by some evidence.

{¶ 50} The magistrates finds that (1) the commission properly invoked its continuing jurisdiction over the PTD award at the March 10, 1998 hearing before the SHO and (2) the commission's determination that relator has been engaged in sustaining remunerative employment beginning January 31, 1994 is supported by some evidence.

{¶ 51} Accordingly, it is the magistrate's decision that this court deny relator's request for writ of mandamus, as more fully explained below.

{¶ 52} Turning to the first issue, continuing jurisdiction is not unlimited. Its prerequisites are (1) new and changed circumstances, (2) fraud, (3) clear mistake of fact, (4) clear mistake of law, and (5) error by inferior tribunal. *State ex rel. Gobich v. Indus. Comm.*, 103 Ohio St.3d 585, 2004-Ohio-5990, 817 N.E.2d 398; *State ex rel. Royal v. Indus. Comm.* (2002), 95 Ohio St.3d 97, 766 N.E.2d 135; *State ex rel. Foster v. Indus. Comm.*, 85 Ohio St.3d 320, 707 N.E.2d 1122; *State ex rel. Nicholls v. Indus. Comm.*, 81 Ohio St.3d 454, 692 N.E.2d 188.

{¶ 53} In *Gobich*, the court states:

> The presence of one of these prerequisites must be clearly articulated in any commission order seeking to exercise reconsideration jurisdiction. *Nicholls; State ex rel Foster v. Indus. Comm.* (1999), 85 Ohio St.3d 320, 707 N.E.2d 1122. This means that the prerequisite must be both identified and explained. Id. It is not enough to say, for example, that there has been a clear error of law. The order must also state what that error is. *Nicholls*, 81 Ohio St.3d at 459, 692 N.E.2d 188; *Foster*, 85 Ohio St.3d at 322, 707 N.E.2d 1122. This ensures that the party opposing reconsideration can prepare a meaningful defense to

the assertion that continuing jurisdiction is warranted. *Royal,* 95 Ohio St.3d at 100, 766 N.E.2d 135. It also permits a reviewing court to determine whether continuing jurisdiction was properly invoked. Id. at 99–100, 766 N.E.2d 135.

{¶ 54} In *Gobich,* the court held that the commission had improperly exercised continuing jurisdiction when it vacated an SHO's order awarding PTD compensation by pronouncing that the SHO's order is based upon "clear mistakes of law." In *Gobich,* the bureau had moved for a commission reconsideration of the SHO's order.

{¶ 55} In *Gobich,* the court found that the bureau's complaint with the SHO's award of permanent total disability was an evidentiary one:

> (T)he bureau produced evidence that it believed established a capacity for sustained remunerative employment, and the SHO found otherwise. *Royal,* however, has specifically stated that a legitimate disagreement as to evidentiary interpretation does not mean that one of them was mistaken and does not, at a minimum, establish that an error was *clear.* Id., 95 Ohio St.3d at 100, 766 N.E.2d 135.
>
> It is also unclear whether the reason for continuing jurisdiction is a mistake of law or a mistake of fact. While the commission claimed the former, it cited no misapplication of the law. To the contrary, it referred only to an omission of fact. *Royal,* moreover, has categorized evidentiary disputes as factual. This is significant because *Nicholls, Foster,* and *Royal* are uncompromising in their demand that the basis for continuing jurisdiction be clearly articulated. The Commission's current justification is ambiguous.

*Gobich,* 103 Ohio St.3d 585, 817 N.E.2d 398, at ¶ 17–18.

{¶ 56} In *Royal,* following the commission's award of PTD compensation, the employer moved for reconsideration. The commission granted reconsideration "based on the possibility of an error in the previous Industrial Commission order." Following a bifurcated hearing that addressed both the propriety of reconsideration and the merits of the PTD claim, two identically dated orders emerged from those proceedings. The first order affirmed the grant of reconsideration based on the presence of a mistake of law or fact. The order identified the mistakes as (1) the SHO's misrepresentation of a particular vocational report and (2) the absence of an analysis of nonmedical disability factors.

{¶ 57} Holding that the commission improperly invoked its continuing jurisdiction, the *Royal* court explains:

> Identification of error *after* reconsideration does allow a reviewing court to adjudicate the propriety of the commission's invocation of continuing jurisdic-

tion. It does little to help the party opposing the motion since it comes too late to allow a meaningful challenge to reconsideration at the administrative level.

(Emphasis sic.) *Royal,* 95 Ohio St.3d at 100, 766 N.E.2d 135.

{¶ 58} The *Royal* court found further fault with the commission's exercise of continuing jurisdiction:

> The reliance on "mistake of fact" is equally untenable. When the initial PTD order and disputed reports are read closely, the perceived error is not so much mistake as a difference in evidentiary interpretation.

Id.

{¶ 59} Citing *Nicholls, Foster,* and *Gobich,* relator claims that the commission lacked authority to exercise its continuing jurisdiction at the March 10, 1998 hearing before the SHO. Relator argues that the March 10, 1998 SHO order fails to address the commission's continuing jurisdiction and even fails to identify which one of the five prerequisites is the basis for continuing jurisdiction to terminate the prior PTD award.

{¶ 60} In the magistrate's view, the basis for the bureau's motion for the exercise of continuing jurisdiction to terminate the PTD award and the basis for the commission's actual exercise of continuing jurisdiction are readily apparent from the March 10, 1998 order as well as the nature of the bureau's motion to terminate.

{¶ 61} The bureau's January 29, 1998 motion to terminate the PTD award and to declare an overpayment was premised upon information discovered by the bureau after the PTD award, i.e., the criminal complaint filed against relator on July 16, 1997. Thus, the bureau's January 29, 1998 motion was not premised upon any alleged error in the commission's order awarding PTD.

{¶ 62} Discovery of evidence subsequent to a PTD award that the claimant is engaging in sustained removing of employment or can engage in sustained remunerative employment is a new and changed circumstance warranting the exercise of continuing jurisdiction over the PTD award. *State ex rel. Alesci v. Indus. Comm.,* 97 Ohio St.3d 210, 2002-Ohio-5932, 777 N.E.2d 835.

{¶ 63} Here, the bureau's discovery that relator had engaged in criminal activities for profit constituted new and changed circumstances that warranted the commission's exercise of continuing jurisdiction to determine whether the PTD award should be terminated.

{¶ 64} Moreover, the failure of the SHO's order of March 10, 1998, to identify new and changed circumstances as the prerequisite for the exercise of continuing jurisdiction does not logically detract in any way from the commission's exercise of its continuing jurisdiction.

{¶ 65} The magistrate finds that the cases relied upon by relator, namely *Nicholls,* 81 Ohio St.3d 454, 692 N.E.2d 188; *Foster,* 85 Ohio St.3d 320, 707 N.E.2d 1122, and *Gobich,* 103 Ohio St.3d 585, 817 N.E.2d 398, are inapposite to the instant case and do not support relator's claim that the commission either lacked authority to exercise continuing jurisdiction or improperly exercised it.

{¶ 66} *Nicholls, Foster,* and *Gobich* involved the exercise of continuing jurisdiction to correct alleged errors contained in prior commission orders. That is not the case here.

{¶ 67} When the issue is whether there exists new and changed circumstances that may justify the exercise of continuing jurisdiction to terminate a PTD award, the bureau's motion does not present an evidentiary disagreement with the prior PTD award. Rather, the motion presents new evidence that has not been considered by the commission. Thus, the concern in *Gobich* that the commission may be engaging in evidentiary reinterpretation through the exercise of its continuing jurisdiction is not present here.

{¶ 68} Accordingly, based upon the above analysis, the magistrate concludes that the commission had continuing jurisdiction to review its PTD award in light of the later evidence discovered by the bureau.

{¶ 69} Turning to the second issue, in *State ex rel. Lawson v. Mondie Forge,* 104 Ohio St.3d 39, 2004-Ohio-6086, 817 N.E.2d 880, the court had occasion to clarify the standard for terminating PTD compensation. The *Lawson* court states, at ¶ 16 and 17:

> PTD pivots on a single question: Is the claimant *capable* of sustained remunerative employment? *State ex rel. Stephenson v. Indus. Comm.* (1987), 31 Ohio St.3d 167, 31 OBR 369, 509 N.E.2d 946. Payment of PTD is inappropriate where there is evidence of (1) actual sustained remunerative employment, *State ex rel Kirby v. Indus. Comm.,* 97 Ohio St.3d 427, 2002-Ohio-6668, 780 N.E.2d 275; (2) the physical ability to do sustained remunerative employment, *State ex rel. Schultz v. Indus. Comm.,* 96 Ohio St.3d 27, 2002-Ohio-3316, 770 N.E.2d 576; or (3) activities so medically inconsistent with the disability evidence that they impeach the medical evidence underlying the award. See *State ex rel. Timmerman Truss, Inc. v. Indus. Comm.,* 102 Ohio St.3d 244, 2004-Ohio-2589, 809 N.E.2d 15, ¶ 26.
>
> The first criterion is the cleanest. Nothing demonstrates capacity better than actual performance. No speculation or residual doubt is involved. * * *

{¶ 70} Here, following the March 10, 1998 hearing, the SHO found that relator:

> has been engaged in criminal activities for profit, which constitutes sustained remunerative employment, from at least 1/31/94 through 7/17/97.

{¶ 71} Thus, it is clear that the SHO terminated the PTD award based upon the first criterion set forth in *Lawson*, i.e., actual sustained remunerative employment.

{¶ 72} The issue presented here is whether the SHO's order relies upon some evidence to support the finding that relator engaged in actual sustained remunerative employment beginning at least January 31, 1994.

{¶ 73} By characterizing the commission's finding as a "vast expansion of the usually accepted concept of sustained remunerative employment," relator suggests that sustained remunerative employment cannot include criminal activities for profit. However, relator cites no authority to support his suggestion. Clearly, the illegality of the activities producing remuneration on a sustained basis does not logically detract in any way from the concept of sustained remunerative employment. Thus, the commission did not abuse its discretion when it found that remunerative illegal activities can constitute sustained remunerative employment.

{¶ 74} Here, the SHO's order of March 10, 1998, cites the criminal complaint signed by special agent Myers on July 16, 1997, as the evidence relied upon to support the finding that relator has been engaged in sustained remunerative employment. As previously noted, the criminal complaint includes an attached 71–page affidavit of special agent Myers that is contained in the record for this court. Pertinent excerpts from the affidavit have been produced above.

{¶ 75} Relator suggests that the 71–page affidavit cannot be viewed by this court as evidence relied upon by the SHO because the SHO did not specifically state reliance on the affidavit. Relator's suggestion lacks merit because the criminal complaint specifically refers to the affidavit as the factual basis for the criminal complaint.

{¶ 76} The excerpts selected from the 71–page affidavit provide some evidence of the remuneration relator received in the course of his criminal activities. One of those excerpts indicates that a confidential source (CS–4) advised that from approximately 1992 to 1994, CS–4 bought $300 to $400 worth of crack cocaine per week from relator. Another confidential source, CS–3, stated that relator sells large amounts of narcotics out of his residence. Yet another confidential source, CS–5, that relator is involved in the drug trafficking business and has numerous cars and houses in his name.

{¶ 77} These excerpts, in the context of the entire affidavit, provided the commission with some evidence, if not compelling evidence, that relator was engaged in criminal activities for profit that constitutes sustained remunerative employment.

473

{¶ 78} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.